PEOPLE v LINO

PEOPLE v BRASHIER

Docket Nos. 92352, 95687. Argued December 1, 1993 (Calendar Nos. 4-5). Decided December 28, 1994.

Luciano Lino was convicted by a jury in the Ingham Circuit Court, Peter D. Houk, J., of gross indecency between males under the standard of *People v Howell,* 396 Mich 16 (1976). The Court of Appeals, NEFF, P.J., and SHEPHERD and McDONALD, JJ., reversed in an opinion per curiam, reasoning that insufficient evidence was presented that the act occurred in a public place (Docket No. 114967). The people appeal.

Edward M. Brashier was charged in the Oakland Circuit Court with one count of procuring or attempting to procure an act of gross indecency between a minor male victim and another male. The court, Fred M. Mester, J., denied the defendant's motion to quash. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and GRIFFIN, J. (MARILYN J. KELLY, J., concurring in part and dissenting in part), reversed on interlocutory appeal in an unpublished opinion per curiam, holding that the adoption of the *Howell* test by *People v Lino,* 190 Mich App 715 (1991), compelled the result (Docket No. 134343). A special panel of the Court of Appeals, DOCTOROFF, C.J., and MURPHY, D. E. HOLBROOK, JR., WAHLS, HOOD, SAWYER, WEAVER, McDONALD, CAVANAGH, and REILLY, JJ. (BRENNAN, NEFF, and CONNOR, JJ., concurring), affirmed in an opinion per curiam, rejecting the *Howell* standard for gross indecency, and adopting the common-sense-of-the-society standard of *People v Carey,* 217 Mich 601 (1922) (Docket No. 150311). The defendant appeals.

In a memorandum opinion, the Supreme Court *held:*

1. MCL 750.338; MSA 28.570 is not unconstitutionally vague as it is applied to the conduct in *Lino* and as applied to the alleged conduct in *Brashier.*

2. To the extent the Court of Appeals in *Brashier* interpreted *People v Carey,* 217 Mich 601 (1922), to leave to the jury's assessment of the common sense of the community the definition of gross indecency, its decision is reversed.

3. Oral sexual conduct committed in a public place is grossly indecent under MCL 750.338; MSA 28.570.

4. Procuring or attempting to procure the specific sexual

conduct alleged in *Brashier* with a person under the age of consent can support a conviction under MCL 750.338; MSA 28.570, regardless of whether the conduct is performed in public.

Justice LEVIN, writing separately, stated that the felony of gross indecency does not encompass engagement by consenting adults in sexual acts in private. Lino is subject to prosecution, if at all, on presentation of sufficient evidence that a sexual act was committed in public, not because oral sex between consenting adults itself is grossly indecent.

While the gross indecency statutes are not void for vagueness as applied to the defendants, the common-sense-of-the-community definition of gross indecency is devoid of substantive limitations, vesting the community—law enforcement officials and juries—with discretion to criminalize sexual behavior it finds offensive, contrary to United States Supreme Court case law requiring the establishment of minimal guidelines to govern law enforcement.

The meaning of "public" is not self-evident. To establish the "public place" element of gross indecency, a prosecutor should be required to prove that when the sexual act was committed, the objective circumstances indicated that it could have, and was likely to have, been seen by members of the public.

Justice BOYLE, joined by Justice BRICKLEY, concurring in part and dissenting in part, stated that in *Brashier,* on the basis of the proofs submitted, the defendant was not properly bound over on the charge of gross indecency.

Gross indecency is limited to specific conduct. The statute does not apply to any "unnatural" or immoral sexual act; rather, it applies only to fellatio between males, of which Brashier is not accused. The scope of the offense of gross indecency historically has not been defined in terms of the common sense of the community. Instead, it covers only oral-genital contact that a jury finds in the circumstances is indecent. Because this conduct was not shown at the preliminary examination, it was error to bind Brashier over on this charge.

There is no support in the almost one-hundred-year history of the statute for its application to either sadomasochistic abuse or activity that involves no sexual contact between the victims and the perpetrators. No matter how reprehensible the alleged conduct, the power to create crimes and establish penalties rests exclusively with the Legislature.

Justice RILEY, joined by Justice GRIFFIN, concurring in part and dissenting in part, stated that gross indecency is defined by

the common sense of the community, i.e., is a question for the trier of fact.

The word "indecent" is a common and general one. As ordinarily understood, it includes anything that is lewd or lascivious, obscene or grossly vulgar, unbecoming, unseemly, unfit to be seen or heard, or that violates the proprieties of language or behavior. The purpose and history of the statute reveal that while oral sexual conduct may constitute gross indecency, other acts, as determined by the trier of fact may violate the common sense of the community.

Lino's conduct constituted gross indecency. A reasonable jury should be permitted to find that fellatio in a well-lit parking lot next to an open restaurant that is visible by the naked eye offends the common sense of society. Fellatio, as noted by the majority, has long been deemed gross indecency by Michigan courts.

In *Brashier,* a jury certainly would be entitled to find that the behavior at issue constituted gross indecency although it did not constitute oral sex. The common sense of the community is clearly offended by these acts. The exact purpose for enacting the gross indecency statute was to combat such aberrant behavior. The appropriateness of maintaining a purposefully vague statute is also clearly revealed by the circumstances of this case. No legislature can be expected to delineate with laser-like precision all possible offensive sexual predilections. A finding that the conduct at issue could not constitute gross indecency simply would be inconsistent with the common law and the purpose of the gross indecency statute.

*Lino,* reversed.

*Brashier,* reversed in part, affirmed in part, and remanded.

190 Mich App 715; 476 NW2d 654 (1991) reversed.

197 Mich App 672; 496 NW2d 385 (1992) reversed in part and affirmed in part.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Susan L. LeDuc,* Deputy Chief Assistant Prosecuting Attorney, for the people in *Lino.*

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Robert C. Williams,* Assis-

tant Prosecuting Attorney, for the people in *Brashier.*

*James D. Lovewell* for Lino.

*Theodore H. Friedman* for Brashier.

Amici Curiae:

*Mark Brewer (Paul Denenfeld,* of counsel), for Criminal Defense Attorneys of Michigan and ACLU Fund of Michigan.

*Thomas F. Coleman* and *Rudolph A. Serra* for Spectrum Institute, Triangle Foundation, and American Association for Personal Privacy.

Memorandum Opinion.

I

These consolidated cases require us to decide the following questions: (1) whether MCL 750.338; MSA 28.570, is unconstitutionally vague, (2) whether the common-sense-of-the-community definition of gross indecency should be overruled, (3) whether oral sexual conduct committed in a public place constitutes gross indecency, and (4) whether the specific sexual conduct alleged in *People v Brashier* constitutes gross indecency because it was committed with a person under the age of consent.

A majority of the justices are of the opinion that (1) MCL 750.338; MSA 28.570 is not unconstitutionally vague as it is applied to the conduct in *Lino* (Cavanagh, C.J., and Levin, Brickley, Boyle, Riley, Griffin, and Mallett, JJ.), and that the statute is not unconstitutionally vague as applied to the alleged conduct in *Brashier.*

(CAVANAGH, C.J., and LEVIN, RILEY, GRIFFIN, and MALLETT, JJ.)

(2) To the extent the Court of Appeals in *Brashier* interpreted *People v Carey* to leave to the jury's assessment of the common sense of the community the definition of gross indecency, the Court of Appeals is reversed. (CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and MALLETT, JJ.)

(3) Oral sexual conduct committed in a public place is grossly indecent under MCL 750.338; MSA 28.570. (CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ.)

(4) Procuring or attempting to procure the specific sexual conduct alleged in *Brashier* with a person under the age of consent can support a conviction under MCL 750.338; MSA 28.570, regardless of whether the conduct is performed in public. (CAVANAGH, C.J., and LEVIN, RILEY, GRIFFIN, and MALLETT, JJ.)

In *Lino,* we reverse the decision of the Court of Appeals and we affirm the defendant's conviction. Fellatio performed in a public place clearly falls within the ambit of MCL 750.338; MSA 28.570.

In *Brashier,* we reverse the decision of the Court of Appeals in part and affirm in part. Defendant Brashier's case is remanded to the trial court so that he may stand trial. Procuring or attempting to procure the specific sexual conduct alleged in *Brashier* with a person under the age of consent can support a conviction under MCL 750.338; MSA 28.570, regardless of whether the conduct is performed in public.

II

A. *PEOPLE v LINO*

On August 23, 1988, several officers, including

officers Smith and Ferguson, were investigating complaints of prostitution in the Michigan Avenue and Larch Street area of Lansing. Smith and Ferguson noticed defendant Lino walking on Larch, waving at passing cars. Lino was dressed as a woman; however, from past experience the officers knew that Lino was a man. The police followed a tan pickup truck that picked up Lino. The pickup eventually came to a stop in the overflow parking lot at DeMarco's restaurant.

The overflow parking lot was enclosed by a six- to eight-foot tall wooden fence on the north and east sides. The south side of the lot is open to the street. There is also an opening on the north side of the fence that allows pedestrian traffic. Although DeMarco's was open for business at the time of the incident (approximately 12:30 A.M.), there were no other vehicles in the overflow lot.

Officer Ferguson testified that, while he was behind the fence to the north, he saw the driver of the truck lean back in his seat and the defendant's head moving over the driver's lap. It was not until the officer climbed up three feet on the fence that he witnessed the defendant performing oral sex (fellatio) on the driver of the pickup truck.

Officer Smith testified that from his vantage point at the pedestrian opening on the north fence, approximately twenty feet away from the vehicle, he saw the driver sitting in the driver's seat while the defendant bent down out of sight. Officer Smith approached the vehicle and observed the defendant performing oral sex on the driver.

The driver of the truck testified that when he picked up the defendant, the defendant offered to perform oral sex for money. After arriving at the parking lot, the driver paid the defendant twenty dollars and the events, as described, occurred.

Judge Peter Houk presided at the defendant's

jury trial. Following the state's proofs, the defense moved for a directed verdict, claiming that the prosecution failed to present sufficient evidence that the act was committed "openly and in a public place." Judge Houk denied the motion. The jury found the defendant guilty of gross indecency between males, MCL 750.338; MSA 28.570, under the standard announced by the plurality opinion in *People v Howell,* 396 Mich 16; 238 NW2d 148 (1976).

On appeal, the defendant claimed that (1) there was insufficient evidence that the act took place in a public place, (2) the gross indecency statute is unconstitutionally vague as applied, and (3) the trial court erred by not instructing the jury under the "common sense of the society standard." The Court of Appeals reversed the defendant's conviction using the *Howell* test and reasoning that the prosecution failed to present sufficient evidence that the act occurred in a public place. 190 Mich App 715, 721; 476 NW2d 654 (1991).

This Court initially denied the prosecutor's application for leave to appeal, but the prosecutor's motion for reconsideration was granted. 443 Mich 882 (1993). We ordered that *Lino* be submitted with *People v Brashier.*

### B. *PEOPLE v BRASHIER*

Brashier was charged in four separate informations. In each, a fourteen- or fifteen-year-old boy was victimized by Brashier and codefendant Goike. These events occurred in November and December of 1989.

The details varied, but the basic theme was the same. Defendant Brashier would strike up a conversation with the minor victim, eventually asking whether the victim was interested in earning some

money by "beatin' up a queer." Defendant Bra-
shier would buy the minor victims lunch and then
take them to a hotel room where codefendant
Goike was waiting.

With Brashier directing the proceedings, the
minors would physically and verbally abuse Goike,
while Goike masturbated. The minors would hit
Goike with a stick, urinate on him, vomit on him,
pour syrup on him, and force him to consume
combinations of these materials. All the while,
Goike would continue to masturbate, eventually to
climax.

For the most part, defendant Brashier's partici-
pation was limited to directing the activities. At
times, he would actively participate in the abuse of
Goike. At the end of these sessions, the minors
were paid and threatened with harm if they ever
revealed what happened.

There was never any direct physical sexual con-
tact between the victims and either Brashier or
Goike.

In separate informations corresponding to the
four minors, these defendants were charged with
one count of procuring or attempting to procure
the commission of an act of gross indecency be-
tween the male minor victim and another male
(the codefendant). In the circuit court, the defen-
dant filed a motion to quash. Oakland Circuit
Court Judge Fred Mester denied the motion.

The Court of Appeals reversed on interlocutory
appeal, holding that the adoption of the *Howell*
test by the *Lino* panel compelled the result. On the
prosecutor's petition, the Court of Appeals agreed
to convene a special panel to resolve the conflict
between the *Howell* standard and the common-
sense-of-the-community standard.

The special panel issued a per curiam opinion
rejecting the *Howell* standard for gross indecency

and adopting the common-sense-of-the-community standard. 197 Mich App 672, 679; 496 NW2d 385 (1992). The three concurring judges would have adopted the *Howell* test; however, they agreed that this defendant nevertheless could be bound over. This Court granted leave to appeal, 443 Mich 882 (1993).

### III

### A

Defendants challenge MCL 750.338; MSA 28.570,[1] as being unconstitutionally vague.[2] In order to pass constitutional muster, a penal statute must define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v Lawson,* 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983) (citations omitted). Vagueness challenges that do not implicate First Amendment freedoms are examined in light of the facts of each particular case. *Howell* at 21. When making a vagueness determination, a court must also take into consideration any judicial constructions of the statute. *Kolender* at 355.

Thus, there are at least three ways a penal

---

[1] The statute in question provides:

Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by a fine of not more than $2500.00 . . . . [MCL 750.338; MSA 28.570.]

[2] This constitutional challenge is brought under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

statute may be found unconstitutionally vague: (1) failure to provide fair notice of what conduct is prohibited, (2) encouragement of arbitrary and discriminatory enforcement, or (3) being overbroad and impinging on First Amendment freedoms.[3] *Howell* at 20-21, n 4.

Defendant Lino's vagueness challenge fails because it is clear that a number of cases hold that the public act of fellatio between males is encompassed within the scope of the gross indecency statute. See *Howell* at 22, and *People v Kalchik*, 160 Mich App 40, 45-46; 407 NW2d 627 (1987). Lino had fair notice that public fellatio between males is prohibited by the statute, and, correspondingly, the statute does not create a risk of arbitrary and discriminatory enforcement.

Nor is the statute vague as it applies to Mr. Brashier. He cannot plausibly claim that he could not have known his conduct was prohibited. In *McSherry v Block*, 880 F2d 1049 (CA 9, 1989), cert den 499 US 943 (1991),[4] the United States Court of Appeals for the Ninth Circuit, rejected a vagueness challenge brought by a defendant convicted of "loiter[ing]" under a California statute that provides in pertinent part:

> Every person who loiters about any school or public place at or near which children attend or normally congregate and who remains at any school or public place at or near which children attend or normally congregate, or who reenters or

---

[3] Neither defendant claims that MCL 750.338; MSA 28.570 impinges on any of their First Amendment freedoms; thus, we do not consider the matter further.

[4] See also *United States v White*, 882 F2d 250, 252 (CA 7, 1989). "Provided that conduct is of a sort widely known among the lay public to be criminal . . . a person is not entitled to clear notice that the conduct violates a *particular* criminal statute. It is enough that he knows that what he is about to do is probably or certainly criminal." (Emphasis in original.)

comes upon such school or place within 72 hours,
after being asked to leave . . . is a vagrant . . . .
[Cal Penal Code, § 653g.]

Although it was undisputed that the petitioner
had not been asked to leave, "[t]he evidence at
trial consisted of highly incriminatory observa-
tions of the appellant at five different schools,
other relevant observations of his behavior, and
his prior convictions for kidnapping a minor and
lewd conduct with a girl under the age of eigh-
teen." 880 F2d 1051. The court noted that "[i]n
applying the rule against vagueness or overbroad-
ness something . . . should depend on the moral
quality of the conduct." Freund, *The supreme
court and civil liberties,* 4 Vand L R 533, 540
(1951), quoted with approval in *Bouie v City of
Columbia,* 378 US 347, 362, n 9; 84 S Ct 1697; 12 L
Ed 2d 894 (1964).[5] The court stated that it was
placing "considerable emphasis on this factor," in
rejecting the petitioner's vagueness challenge. 880
F2d 1055.

In *Rose v Locke,* 423 US 48, 51; 96 S Ct 243; 46
L Ed 2d 185 (1975), the United States Supreme
Court said: "[A]lthough [*Wainwright v Stone,* 414
US 21; 94 S. Ct 190; 38 L Ed 2d 179 (1973)]
demonstrated that the existence of previous appli-
cations of a particular statute to one set of facts
forecloses lack-of-fair-warning challenges to subse-
quent prosecutions of factually identical conduct,
it did not hold that such applications were a
prerequisite to a statute's withstanding constitu-
tional attack." In that case, the United States

---

[5] In *Bouie* at 362, the Court held that due process notice require-
ments prevented a previously unannounced interpretation of a tres-
passing statute from being applied retroactively to civil rights protes-
ters. The Court noted that "[a]pplication of this rule is particularly
compelling where, as here, the petitioners' conduct cannot be deemed
improper or immoral."

Supreme Court upheld a conviction for forced cunnilingus under a Missouri statute proscribing "crime[s] against nature," despite the fact that Missouri courts had never applied the statute to the precise facts of the defendant's case. Brashier was therefore on notice that sexual activity involving persons under the age of consent could constitute the statutory crime of gross indecency.

B

With respect to defendant Lino, fellatio performed in a public place clearly falls within the ambit of the gross indecency statute.

With respect to defendant Brashier, we remand his case to the trial court so that he may stand trial. If proven true, Brashier's alleged conduct in orchestrating the conduct of the minors, to facilitate Goike's sexual arousal and masturbation in the presence of the minors would constitute the offense of procuring, or attempting to procure, an act of gross indecency even though it was not committed in a public place. Procuring or attempting to procure an act of gross indecency with a person under the age of consent can support a conviction under MCL 750.338; MSA 28.570, regardless of whether the conduct is performed in public.

C

This memorandum opinion is signed by the seven participating justices. There are separate concurring and dissenting opinions. However, at least four justices concur in every holding, statement, and disposition of this memorandum opinion.

LEVIN, J. (*separate opinion*). We all agree that Luciano Lino was subject to prosecution for the

offense of gross indecency between male persons[1] on presentation of sufficient evidence that he performed oral sex (fellatio) with another man in public.[2]

---

[1] Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years . . . . [MCL 750.338; MSA 28.570.]

[2] Lino is a male prostitute, who, at the time, was dressed as a woman. He was charged with gross indecency on evidence that he was waiving at automobiles, entered a pick-up truck, which drove to an empty, well-lit, overflow parking lot, and was observed by a police officer, standing in an opening in a fence surrounding the lot, performing fellatio on an occupant.

Lino contended that the sexual act was done in private and therefore did not constitute gross indecency under the circumstances that the act took place in an empty parking lot, in a private vehicle where there was a reasonable expectation of privacy, and the arresting officers were able to observe the act only by making a deliberate effort to look into the vehicle.

The Court of Appeals reversed Lino's conviction because there was "insufficient evidence that the act defendant was convicted of occurred in a public place." *People v Lino,* 190 Mich App 715, 721; 476 NW2d 654 (1991). The Court stated "that the better definition of gross indecency is that expressed in the *Howell* opinion," *id.,* p 720, referring to the plurality opinion in *People v Howell,* 396 Mich 16, 24; 238 NW2d 148 (1976), where the plurality said:

Accordingly, we reject the construction of the Court of Appeals in *Dexter* and construe the term "act of gross indecency" to prohibit oral and manual sexual acts committed *without consent* or with a person *under the age of consent* or any ultimate sexual act committed *in public.* [Emphasis added.]

*People v Dexter,* 6 Mich App 247, 253; 148 NW2d 915 (1967), referred to in the plurality opinion in *Howell,* restated the definition of gross indecency set forth in *People v Carey,* 217 Mich 601; 187 NW2d 261 (1922), which was based on *People v Hicks,* 98 Mich 86, 90; 56 NW 1102 (1893), which so defined the offense of taking "indecent and improper liberties with the person of a [female child under the age of 14]."

The Court of Appeals said that there was no light on inside the pick-up truck, and described the other evidence as follows:

The parking lot was enclosed by a six- to eight-foot-tall wooden fence on the north and east sides. Officer Ferguson

I agree with the majority[3] that Edward Brashier is subject to prosecution for gross indecency between male persons on presentation of sufficient evidence that he procured minors to perform fetishes to arouse Paul Goike sexually while Goike was masturbating to climax, even though the conduct was not in public and the minors and Goike did not touch each other.[4]

parked his vehicle and approached the lot where the pickup was parked. The truck was parked in the northeast corner of the lot with its lights off. From behind the fence, Officer Ferguson observed defendant's head moving "in an up-and-down motion on the lap of the driver." Officer Ferguson then stood on a supporting crosspiece of the fence that was about three feet of the ground. From that vantage point, Officer Ferguson also observed the driver's exposed penis. Officer Ferguson and two other officers then approached the vehicle. When one officer identified himself, the driver started his vehicle and drove away at a high rate of speed. The driver was later apprehended.

Lansing Police Officer Clyde Smith was also working surveillance that night, and was riding alone in an unmarked police car. Officer Smith observed the driver of the truck pick up defendant. He then followed the truck to the parking lot, got out of his vehicle, and met with Officer Ferguson, who was observing the truck. Officer Smith was also able to observe defendant performing an act of fellatio on the driver.

The driver of the truck testified that when he picked up defendant, defendant offered him sex for money. After the two arrived in the parking lot, the driver paid defendant, and defendant thereafter performed fellatio upon him. The driver testified that, when he parked in the lot, he intended that the activities in the truck would remain private. [190 Mich App 716-717.]

[3] As set forth in the memorandum opinion signed by all seven justices, this opinion and one of the two dissenting/concurring opinions (see opinion of Riley, J., *post*, p 623).

[4] *Brashier* involves behavior with minors. Brashier procured minors to perform fetishes described in the memorandum opinion and in one of the dissenting/concurring opinions (Riley, J., *post*, pp 622-623) that aroused Goike. It appears that the minors observed, and, to the extent so described, assisted and participated in Goike's acts of masturbation, who, aided by the activity of the minors so arousing him, masturbated until he reached orgasm.

In the instant case of *Brashier*, a superpanel of the Court of Appeals, disagreeing with the panel in *Lino* (see n 2), restated the definition of gross indecency set forth in *People v Carey*, n 2 *supra*. *People v Brashier*, 197 Mich App 672, 679; 496 NW2d 385 (1992).

I

The question shrouded under the sheets, and veiled behind the pages, of the several opinions, is whether it constitutes the felony of gross indecency for consenting adults to engage in oral, anal, or manual sex in private.

A

Lino is subject to prosecution, if at all, on presentation of sufficient evidence that a sexual act was committed in public, not because oral sex between consenting adults itself is grossly indecent. A married man and woman would be subject to prosecution for gross indecency between a male and a female person[5] if they were to engage in "normal" heterosexual intercourse in public.

I agree with the concurring judges in *Brashier* that a jury could find that what is alleged to have occurred was grossly indecent under the *Howell* definition of gross indecency. It involved a manual sexual act committed by Goike "*with* a person under the age of consent" (see n 2 for the *Howell* definition), even though the persons under the age of consent did not touch Goike. *Brashier, supra,* p 680, n 1.

The judges said that the *Howell* definition "is clear, concise, and sufficiently inclusive to include defendant Brashier's grossly indecent conduct." *Id.,* p 680. The concurring opinion explained:

The principal, Goike, performed manual sex acts, masturbation, while defendant encouraged and assisted several persons under the age of consent to abuse Goike until he experienced orgasm. Defendant paid the juveniles; he threatened them; he scripted their actions; he participated in the abuse. He *aided and abetted* the commission of gross indecency as defined by *Howell.* [*Brashier, supra,* p 680, n 1. Emphasis in original.]

In sum, without regard to whether one opts for the definition put forth in *Howell* or for the "common sense of the community" definition, a person who procures minors to perform the fetishes of a person who is masturbating in their presence, has committed, or aided and abetted, or procured, the commission of an act of gross indecency, even though the activity occurs in private.

[5] Any male person who, in public or in private, commits or is a party to the commission of any act of gross indecency with a

I would hold, following the lead of the Court of Appeals of Maryland in *Schochet v Maryland,* 320 Md 714; 580 A2d 176 (1990), that it does not constitute the felony of gross indecency for adults to engage in oral sex (fellatio, cunnilingus) or anal sex, or manual sex, including masturbation or other manual penetration or arousal, as long as the activity is consensual and in private.[6]

female person shall be guilty of a felony, punishable as provided in this section. Any female person who, in public or in private, commits or is a party to the commission of any act of gross indecency with a male person shall be guilty of a felony punishable as provided in this section. Any person who procures or attempts to procure the commission of any act of gross indecency by and between any male person and any female person shall be guilty of a felony punishable as provided in this section. [MCL 750.338b; MSA 28.570(2).]

The Penal Code also proscribes, in identical language, the commission of "any act of gross indecency" between female persons:

Any female person who, in public or in private, commits or is a party to the commission of, or any person who procures or attempts to procure the commission by any female person of any act of gross indecency with another female person shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years . . . . [MCL 750.338a; MSA 28.570(1).]

[6] In *Kentucky v Wasson,* 842 SW2d 487 (Ky, 1992), the Supreme Court of Kentucky held that a criminal statute proscribing consensual homosexual sodomy violates private and equal protection guarantees of the Kentucky Constitution.

In *Texas v Morales,* 826 SW2d 201 (Tex App, 1992), the Court of Appeals of Texas held that a Texas statute criminalizing private sexual relations between consenting adults of the same sex was unconstitutional, and enjoined enforcement. The court ruled that lesbians and gay men had standing to bring a civil action challenging the statute's constitutionality, the district court had jurisdiction to grant declaratory and injunctive relief, and the statute violated the state constitutional right of privacy. This decision was reversed by the Texas Supreme Court on the basis that the Texas Court of Appeals did not have jurisdiction regarding criminal statutes, and that only the Texas Supreme Court had jurisdiction. *State v Morales,* 869 SW2d 941 (Tex, 1994).

In *Bowers v Hardwick,* 478 US 186; 106 S Ct 2841; 92 L Ed 2d 140 (1986), in an opinion by Justice White and signed by Chief Justice Burger and Justices Powell, Rehnquist and O'Connor, the United

Schochet had been acquitted by the jury of rape, anal intercourse, sodomy, and fellatio of the complaining witness by force or threat of force against her will and without her consent, but convicted of committing "a certain unnatural and perverted sexual practice," namely fellatio, with the complaining witness. *Id.,* p 718.

Schochet alleged that the statute criminalizing "unnatural and perverted sexual practice" on evidence of fellatio was unconstitutional as applied to private and noncommercial sexual acts between consenting heterosexual adults.

States Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not confer a fundamental right on homosexuals to engage in consensual sodomy, even in the privacy of their home.

Justice Powell concurred, pointing out that Hardwick had not been tried, much less convicted and sentenced, and that this was an action for declaratory judgment challenging the validity of the statute. Justice Powell said that it was conceded during oral argument that there had been no reported decision involving prosecution for private homosexual sodomy for several decades, and added:

> The history of nonenforcement suggests the moribund character today of laws criminalizing this type of private, consensual conduct. Some 26 States have repealed similar statutes. But the constitutional validity of the Georgia statute was put in issue by respondents, and for the reasons stated by the Court, I cannot say that conduct condemned for hundreds of years has now become a fundamental right. [*Id.,* p 198, n 20.]

Justice Blackmun's dissent, joined by Justices Brennan, Marshall and Stephens, began with the following statement:

> This case is no more about "a fundamental right to engage in homosexual sodomy," as the Court purports to declare, ante, at 191, than *Stanley v Georgia,* 394 US 557 [89 S Ct 1243; 22 L Ed 2d 542] (1969), was about a fundamental right to watch obscene movies, or *Katz v United States,* 389 US 347 [88 S Ct 507; 19 L Ed 2d 576] (1967), was about a fundamental right to place interstate bets from a telephone booth. Rather, this case is about "the most comprehensive of rights and the right most valued by civilized men," namely, "the right to be let alone." *Olmstead v United States,* 277 US 438, 478 [48 S Ct 564; 72 L Ed 944; 66 ALR 376] (1928) (Brandeis, J., dissenting). [*Id.,* p 199.]

Maryland's highest court said that the principle that a statute should be construed to avoid constitutional questions[7] was applicable, and that, to avoid deciding whether criminalizing fellatio was unconstitutional, it would hold that the statute did not encompass consensual, noncommercial heterosexual activity between adults in the privacy of a home. Schochet's conviction was reversed, with the direction that a judgment of acquittal be entered.

**B**

Instructions to a jury should be clear that the accused cannot be convicted of the offense of gross indecency because it might be thought by some or many members of the community that oral, anal, or manual sex is grossly indecent, or that sex between a transvestite[8] and another man, or between persons who are not married to each other, or in exchange for the payment of money or other consideration,[9] is grossly indecent.

After the superpanel decision of the Court of Appeals in *People v Brashier,* 197 Mich App 672; 496 NW2d 385 (1992), a new standard criminal jury instruction, replacing an instruction based on the definition of gross indecency set forth in the plurality opinion in *People v Howell,* 396 Mich 16; 238 NW2d 148 (1976),[10] was promulgated by the

---

[7] See part II, pp 589 ff.

[8] Lino, a male prostitute, was clothed as a woman.

[9] If, as I would hold, an act of fellatio or cunnilingus committed by consenting adults in private is not grossly indecent, it does not, in my opinion, become grossly indecent because money is paid.

[10] See n 2 for the definition of gross indecency set forth in the plurality opinion in *Howell.*

The former instruction, based on *Howell,* read as follows:

(1) The defendant is charged with having committed an act of gross indecency with [another male/another female/a male/a female]. The defendant pleads not guilty to this charge. To

Michigan State Bar Standing Committee on Standard Criminal Jury Instructions, which was established under the authority of this Court.

The new standard instruction allows a jury to decide whether the sexual act charged in the information constitutes an act of gross indecency. The new standard instruction reads:

> (1) The defendant is charged with the crime of committing an act of gross indecency with another person. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, that the defendant voluntarily committed a sexual act with another person.
>
> (3) Second, that this sexual act was an act of gross indecency. *An act is grossly indecent if it is of such a character that the common sense of society regards it as indecent and improper.* [CJI2d 20.31. Emphasis added.]

This new standard instruction shows the deficiency of the common-sense-of-the-community[11] def-

---

establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt:

(2) First, the defendant must have voluntarily committed either a manual or an oral sexual act with a [male/female] person.

(3) A manual sexual act means that the defendant handled the sexual organs of the victim.

(4) An oral sexual act means that [the mouth or tongue of one person was placed in contact with the sexual organs of another/the penis of one person entered into or against the mouth of another].

(5) Second, if you find that such an act was committed, then you must further determine that the act was committed [without the consent of the complainant/with the complainant and that the complainant was under the age of sixteen years at the time of the alleged offense/openly in a public place]. [CJI 20:7:01.]

[11] The early cases adverted to in *Brashier* and by the majority speak of both the "common sense of the community" and the "common sense of society."

inition, absent further direction from this Court. This new standard instruction does not, in contrast with the former instruction, state that where consenting adults are the only persons involved, the accused may be convicted of gross indecency only if the jury finds that the sexual act was committed in public.

Nor does the new standard instruction state—as the old instruction in effect provided—that an oral, anal, or manual sexual act between consenting adults in private is not an act of gross indecency. Nor does the new standard instruction state—as the old instruction in effect provided—that whether a sexual act is grossly indecent does not depend on whether the act is heterosexual or between gays or lesbians.

C

Unless a majority of this Court is prepared to affirm a jury verdict finding that oral, anal, or manual sex in private between consenting adult heterosexuals, or gays or lesbians, is grossly indecent, a majority of this Court should *preclude such a prosecution* or conviction by providing an alternative standard instruction that *does not permit the prosecution* or conviction of consenting adults under any such circumstances for the commission of such acts in private.

Even if a prosecutor knows that he might not be able to obtain a conviction, he may ruin a person, such as an elected official, by bringing the prosecution. Permitting a prosecutor to commence a prosecution and cause arrests for, and conduct a preliminary examination concerning, and the trier of fact, generally a jury, to decide whether sexual acts committed by consenting adults in private

constitute acts of gross indecency, poses a substantial risk of abuse.[12]

This Court should not wait until long after a prosecutor in one of the eighty-three counties files an information against gays or lesbians or heterosexuals for consensual sexual acts committed in private to rein in unstructured prosecutorial/jury discretion.

### D

Penalties are provided by the criminal sexual conduct act to cover nonconsensual sexual behavior, or sexual behavior with a person under the age of consent.[13] In addition to the gross indecency charge, Brashier was charged with contributing to the delinquency of a child under the age of seventeen,[14] with accosting, enticing, or soliciting a child under the age of sixteen years to commit an immoral act,[15] and with conspiracy to commit an offense prohibited by law.[16]

It, therefore, appears that there is little, or at least less, need to continue to include within the definition of gross indecency sexual acts committed

---

[12] Such prosecutions could also again become a weapon in a divorce action, where one spouse employs private detectives, obtains the names of lovers or prostitutes, and demands prosecution of the other spouse for engaging in an act of gross indecency.

[13] Csc of the third degree, a felony punishable by imprisonment for not more than fifteen years, includes sexual penetration with another person where force or coercion is used, or with a person who is at least thirteen and under sixteen. MCL 750.520d; MSA 28.788(4).

Force or coercion includes any of the circumstances listed in § 520b(1)(f)(i) to (v) of the Penal Code. MCL 750.520b; MSA 28.788(2).

Csc of the first degree, a felony punishable by imprisonment for life or for any term of years, includes sexual penetration with another person who is under thirteen years of age. MCL 750.520b; MSA 28.788(2).

[14] MCL 750.145; MSA 28.340.

[15] MCL 750.145a; MSA 28.341.

[16] MCL 750.157a; MSA 28.354(1).

without consent, or with a person under the age of consent,[17] or, indeed, for a definition of gross indecency stating *what constitutes gross indecency.*

There is, however, clearly a need—to avoid conferring unstructured discretion on the prosecutor/trier of fact to determine whether an offense has been committed—for this Court to state *what does not constitute gross indecency,* and specifically for this Court to state that oral, anal, or manual sexual acts committed in private by consenting adults are not grossly indecent. As in *People v Myers,* 161 Mich App 215; 409 NW2d 788 (1987), and *People v Emmerich,* 175 Mich App 283; 437 NW2d 30 (1989), this Court should state *what does not* constitute gross indecency.[18]

---

[17] In *People v Howell,* n 2 *supra,* a plurality of this Court defined "gross indecency" to include sexual acts committed in public, or without the consent of the other person involved, or with a person under the age of consent.

The criminal sexual conduct act (MCL 750.520a *et seq.;* MSA 28.788[1] *et seq.)* became effective after the sexual conduct involved in *Howell* occurred, a little over a year before *Howell* was decided.

The CSC act defines "sexual contact" and "sexual penetration" broadly.

> (k) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.
>
> (l) "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required. [MCL 750.520a; MSA 28.788(1).]

The definition of sexual penetration would include sodomy.

Sodomy, "the abominable and detestable crime against nature, either with mankind or with any animal," continues to be defined in a separate provision of the Penal Code, with a fifteen-year penalty. MCL 750.158; MSA 28.355. See *Bowers,* n 6 *supra.*

[18] In *Myers,* the Court of Appeals held that a male person's grabbing and massaging over clothing the groin area of another male person did not constitute gross indecency. The other male person was

II

I agree with the majority that the gross inde-
cency statutes are not void for vagueness as ap-
plied to Lino and Brashier. Because of the manner
in which the gross indecency statutes have been
construed,[19] Lino and Brashier cannot claim that
the statutes failed to "define the criminal offense
[of gross indecency] with sufficient definiteness

a state trooper who, acting in an undercover capacity, was at the
entry of a toilet stall in a public restroom at a highway rest area. The
two engaged in small talk. The defendant began stroking himself in
the groin area and stated he wanted to play with the trooper. When
the trooper asked the defendant what he meant, the defendant put
his arm around the trooper's shoulder and, with his other hand,
grabbed and began to massage the trooper's groin area, stating "let's
play." The trooper then arrested the defendant. *Id.,* p 216.

The Court said that since the Court of Appeals, following the
"common sense of the community" definition, stated in *People v
Dexter,* n 2 *supra,* had "consistently applied the gross indecency
statute at issue and the other gross indecency statutes to cases
involving oral sexual acts, we decline, in this instance, to apply the
statute to the fact situation herein involving the defendant's touching
of another's genital area over clothing." *Myers, supra,* pp 220-221.

In *Emmerich,* as in *Myers,* an undercover police officer engaged in
conversation and then some activity with the defendant, concluding
with the defendant placing his leg between the officer's legs, rubbing
back and forth, and finally placing his pocketed hand on the officer's
groin area, putting pressure on his genitals, with inquiry regarding
what the other "liked." *Id.,* p 284. The Court opted for the *Howell*
test, but said that even under the "common sense of the community"
definition, the touching of the genital area over clothing was not
grossly indecent, citing *Myers. Emmerich, supra,* p 289. ·

[19] Before Lino's conduct, the Court of Appeals held that performing
fellatio in public constitutes gross indecency. See *People v Kalchik,*
160 Mich App 40, 45-46; 407 NW2d 627 (1987).

In *Howell,* n 2 *supra,* p 21, a plurality of this Court held that the
gross indecency statutes prohibit oral sexual acts with a person under
the age of consent. The *Howell* test was adopted by at least two
panels of the Court of Appeals before Brashier's conduct. *People v
Emmerich, supra,* text accompanying n 18; *People v Lynch,* 179 Mich
App 63; 445 NW2d 803 (1989). The phrase "with a person under the
age of consent" (see n 2 for definition of gross indecency in the *Howell*
opinion) can fairly be read to cover sexual acts that "involve" the
participation of minors although the minors do not touch the person
performing the sexual act. See n 4.

that ordinary people can understand what conduct is prohibited . . . ."[20]

Although the gross indecency statutes are not void for vagueness as applied to Lino and Brashier, this Court has an obligation to construe them to remedy the vagueness of "gross indecency."

In *Hamling v United States,* 418 US 87, 110-116; 94 S Ct 2887; 41 L Ed 2d 590 (1974), the United States Supreme Court held that the defendant had notice, through earlier decisions, that a federal obscenity statute applied to the materials he circulated, and thus the statute was not void for vagueness as applied to him. The Court nevertheless then construed the statute so that it would be consistent with the obscenity definition set forth in *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

In *Commonwealth v Balthazar,* 366 Mass 298; 318 NE2d 478 (1974), the Supreme Judicial Court of Massachusetts held that a statute barring unnatural and lascivious acts was not vague as applied to the defendant, but nevertheless narrowed an earlier construction of the statute to remedy vagueness.

In *Pryor v Municipal Court of Los Angeles,* 25 Cal 3d 238, 253; 158 Cal Rptr 330; 599 P2d 636 (1979), a statute prohibiting solicitation of "lewd" and "dissolute" conduct, was held not to be vague as applied to the defendant. The California Supreme Court nevertheless adopted a narrowing construction to remedy vagueness, and said: "The judiciary bears an obligation to 'construe enactments to give specific content to terms that might otherwise be unconstitutionally vague.' "[21]

---

[20] *Kolender v Lawson,* 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983).

[21] Similarly, see *People v Hayes,* 421 Mich 271, 284; 364 NW2d 635 (1984).

III

A criminal statute must provide fair warning of
the conduct it prohibits, and may not vest law
enforcement officials and juries with unbridled
discretion to determine the conduct that is prohib-
ited. *Kolender v Lawson,* 461 US 352, 357; 103 S
Ct 1855; 75 L Ed 2d 903 (1983). The "common
sense of the community" definition fails both
prongs of this proscription.

A

An average citizen would not be able to deter-
mine the conduct that offends the "common sense
of the community." "In the final analysis, each
individual has his own moral codes, private and
public, and what acts [sexual acts in this case]
might be considered as injurious to public morals
are as numerous as the opinions of man."[22] The
common-sense-of-the-community definition specifies
"no standard of conduct . . . at all." *Coates v
Cincinnati,* 402 US 611, 614; 91 S Ct 1686; 29 L Ed
2d 214 (1971).

The common-sense-of-the-community definition
is vague in much the same way as the ordinance
in *Coates* that prohibited "three or more persons
to assemble . . . on any of the sidewalks . . . and
there conduct themselves in a manner annoying to
persons passing by . . . ." In striking down the
ordinance, the United States Supreme Court said:

> Conduct that annoys some people does not an-
> noy others. Thus, the ordinance is vague, not in
> the sense that it requires a person to conform his
> conduct to an imprecise but comprehensible nor-
> mative standard, but rather in the sense that no

[22] *State v Musser,* 118 Utah 537, 544; 223 P2d 193 (1950) (Latimer,
J., concurring in the result).

standard of conduct is specified at all. [*Coates, supra,* p 614.]

A legislature, thus, may not enact a standard for criminal liability that depends on the varied and constantly changing sensibilities of the public.[23]

In *Commonwealth v Balthazar, supra,* the court reconsidered its earlier decision in *Jaquith v Commonwealth,* 331 Mass 439, 442; 120 NE2d 189 (1954), in which it had defined the term "unnatural and lascivious acts" as signifying "irregular indulgence in sexual behavior, illicit sexual relations, and infamous conduct which is lustful, obscene, *and in deviation of accepted customs and manners.*" (Emphasis added.) The court, to remedy vagueness, held that the "unnatural and lascivious acts" statute would no longer apply to private consensual sexual relations between adults. The court said:

> In light of these changes [developments in the right to privacy] and *in light of our own awareness that community values on the subject of permissible sexual conduct no longer are as monolithic as the* Jaquith *case suggested they were in 1954, we conclude that* [Mass Ann Laws, ch 272, § 35] *must be construed to be inapplicable to private, consensual conduct of adults.* We do so on the ground that the concept of general community disapproval of specific sexual conduct, which is inherent in § 35, requires such an interpretation. [*Balthazar, supra,* p 302. Emphasis added.]

The court held, however, that because Balthazar

---

[23] The Court in *Coates* was concerned that the ordinance had the potential to infringe on the First Amendment right of assembly. The decision did not rest, however, entirely on the Court's First Amendment concerns. The Court said that even "conduct clearly within the city's constitutional power to prohibit" could not be prohibited "through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed." *Id.,* p 614.

had been convicted of forcing a woman to engage in sexual relations, the statute could be applied to him.

When Balthazar sought a writ of habeas corpus, the federal courts joined Massachusetts' highest court in recognizing the impermissible vagueness of a criminal statute that bases liability on community standards. The United States District Court for the District of Massachusetts said:

> While a state may have a legitimate interest in protecting community sensibilities, criminal liability should only attach to clearly delineated transgression. Currents of community standards are constantly shifting. These changes are sometime subtle. Standards are apt to vary from generation to generation without the specific awareness of either generation. This is true in the area of private sexual conduct, among others. [*Balthazar v Superior Court of Massachusetts,* 428 F Supp 425, 433 (D Mass, 1977).]

On appeal to the United States Court of Appeals for the First Circuit, the court said that the "District Court was rightly concerned that the use of constantly shifting community standards, as the test of what conduct falls within the terms of a criminal statute, places the public 'at its peril to anticipate a judicial pronouncement that public standards of morality have changed.' "[24] *Balthazar v Superior Court of Massachusetts,* 573 F2d 698, 701 (CA 1, 1978).[25]

[24] The district court had issued a writ of habeas corpus releasing Balthazar because "unnatural and lascivious acts" was impermissibly vague. The First Circuit affirmed.

[25] In *District of Columbia v Walters,* 319 A2d 332, 335 (DC App, 1974), the District of Columbia Court of Appeals held that the portion of a district statute that prohibited the commission of any "lewd, obscene, or indecent act" was void for vagueness. The court said:

B

The "common sense of the community" defini-
tion vests the community—law enforcement offi-
cials and juries—with discretion to criminalize
sexual behavior it finds offensive. This discretion
conflicts with the United States Supreme Court's
recent statement "that the more important aspect
of the vagueness doctrine 'is not actual notice, but

> The statute betrays the classic defects of vagueness in that it
> fails to give clear notice of what conduct is forbidden and
> invests the police with excessive discretion to decide, after the
> fact, who has violated the law. . . . Opposing segments of the
> public may well agree as to the lewdness, obscenity or inde-
> cency of many acts, to paraphrase the court in *Ricks v District
> of Columbia,* 134 US App DC 201, 210-211; 414 F2d 1097 (1968),
> but they will disagree about many other acts without approach-
> ing absurdity. *Thus, there is a broad gray area in which the
> words of the statute will convey substantially different stan-
> dards to different people. An act that is obscene to one person
> may be quite innocent to another—and by proscribing "any
> other lewd, obscene or indecent act" the statute is so ency-
> clopedic in its reach that areas of reasonable disagreement are
> limitless.* [Emphasis added.]

In *Pryor, supra,* the California Supreme Court similarly held that
language of a criminal statute that required a citizen to make
predictions about his community's moral sensibilities was impermissi-
bly vague. The court said:

> Some jurors would find that acts of extramarital intercourse
> fall within that definition [lustful, lascivious, unchaste, wanton,
> or loose in morals and conduct]; some would draw the line
> between intercourse and other sexual acts; others would distin-
> guish between homosexual and heterosexual acts. Thus one
> could not determine what actions are rendered criminal by
> reading the statute or even the decisions which interpret it. *He
> must gauge the temper of the community, and predict at his
> peril the moral and sexual attitudes of those who will be called
> to serve on the jury.* [*Id.,* pp 251-252. Emphasis added.]

The court limited the offense of committing "lewd and dissolute
conduct" in public to "conduct which involves the touching of geni-
tals, buttocks, or female breast for the purpose of sexual arousal,
gratification, annoyance or offense . . . ." *Id.* at 256. The court
adopted this narrowing construction, in part, because it did "*not
impose vague and far-reaching standards under which the criminality
of an act depends upon the moral views of the judge or jury . . . .*"
*Id.,* p 257. (Emphasis added.)

the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Kolender, supra,* p 358. Where the legislature fails to enact such guidelines, the Court explained, "a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' "

Under the "common sense of the community" definition, police, prosecutors, and especially juries make the sort of standardless sweep of sexual behavior prohibited in *Kolender.* As stated by the Supreme Court of Alaska, in holding that a statute proscribing the "crime against nature" was void for vagueness: "[w]e cannot allow criminality to depend only upon the moral sentiment or idiosyncracies of the tribunal before which a defendant is tried." *Harris v State,* 457 P2d 638, 641 (Alas, 1969).

In a gross indecency prosecution under the common sense of the community definition, the prosecutor is not required to call "expert" witnesses to provide evidence concerning the common sense of the community. The prosecutor simply presents proof of the allegedly indecent act. The judge then instructs the jury that if it finds that the defendant committed the act and that the act offends the common sense of the community, it should convict. The jury thus becomes the arbiter of what constitutes the common sense of the community.[26]

There is no fixed yardstick against which to measure the jury's conclusion that the act in

[26] In *People v Ferguson,* 45 Mich App 697, 700; 206 NW2d 812 (1973), and *People v McCaleb,* 37 Mich App 502, 507; 195 NW2d 17 (1972), the Court of Appeals explained that, under the "common sense of the community" test, the jury must be instructed that an essential element of the charge is "whether the defendant's conduct measured by their *own* common sense was indecent and improper." (Emphasis added.)

question violates the "common sense of the community." Because the jury *is* "the community," its determination that an act offends the common sense of the community would ordinarily decide the matter. Under the "common sense of the community" definition, a reviewing court would find it difficult to decide that the "community" misapplied its own "common sense."

The United States Supreme Court's obscenity jurisprudence[27] shows the importance of substantive limitations ("fixed yardsticks") in criminal statutes. In *Jenkins v Georgia,* 418 US 153, 159; 94 S Ct 2750; 41 L Ed 2d 642 (1974), the Court reversed a decision of the Georgia Supreme Court that affirmed the defendant's obscenity conviction for showing the movie "Carnal Knowledge." In the United States Supreme Court, the State of Georgia argued that the question whether the film was obscene was "a question of fact for the jury, and that the jury having resolved this question against appellant, and there being some evidence to support its findings, the judgment of conviction should be affirmed." The Court unanimously rejected Georgia's argument that the jury's verdict must be affirmed simply because there was some evidence to support it, and the implication that an obscenity conviction must be affirmed whenever a jury determines that the material violated "community standards."[28]

---

[27] In *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), the United States Supreme Court held that a trier of fact may convict a defendant under an obscenity statute if it finds that (1) the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; (2) the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; (3) the work as a whole lacks serious artistic, literary, political, or scientific value.

[28] The Court said that it did not

*agree with the Supreme Court of Georgia's apparent conclusion*

The *Jenkins* decision[29] shows that an obscenity

> *that the jury's verdict against appellant virtually precluded all
> further appellate review* of appellant's assertion that his exhi-
> bition of the film was protected by the First and Fourteenth
> Amendments. Even though questions of appeal to the "prurient
> interest" or of patent offensiveness are "essentially questions of
> fact," *it would be a serious misreading of* Miller *to conclude
> that juries have unbridled discretion in determining what is
> "patently offensive."* Not only did we there say that "the First
> Amendment values applicable to the States through the Four-
> teenth Amendment are adequately protected by the ultimate
> power of appellate courts to conduct an independent review of
> constitutional claims when necessary," [*Miller, supra*] 413 US
> 25, but we made it plain that under that holding "no one will
> be subject to prosecution for the sale or exposure of obscene
> materials unless these materials depict or describe patently
> offensive 'hard core' sexual conduct. . . ." *Id.* at 27.
>
> We also took pains in *Miller* to "give a few plain examples of
> what a state statute could define for regulation under part (b)
> of the standard announced," that is, the requirement of patent
> offensiveness. *Id.* at 25. These examples included "representa-
> tions or descriptions of ultimate sexual acts, normal or per-
> verted, actual or simulated," and "representations or descrip-
> tions of masturbations, excretory functions, and lewd exhibition
> of the genitals." *Ibid.* While this did not purport to be an
> exhaustive catalog of what juries might find patently offensive,
> *it was certainly intended to fix substantive constitutional limi-
> tations,* deriving from the First Amendment, on the type of
> material subject to such a determination. It would be wholly at
> odds with this aspect of *Miller* to uphold an obscenity convic-
> tion based upon a defendant's depiction of a woman with a bare
> midriff, *even though a properly charged jury unanimously
> agreed on a verdict of guilty.* [418 US 160-161. Emphasis
> added.]

[29] While the values underlying the First Amendment were impor-
tant to the Court in *Jenkins,* the broader teaching of *Jenkins* is that
unbridled discretion to find conduct criminal cannot be confided to the
trier of fact.

In *State v Henry,* 302 Or 510, 513; 732 P2d 9 (1987), an obscenity
prosecution that focused on the application of "contemporary stan-
dards" to allegedly obscene material, the court said:

> The indeterminacy of the crime created by [Oregon Revised
> Statutes] 167.087 does not lie in the phrase "sexual conduct"
> that is further defined in ORS 167.060(10). It lies in tying the
> criminality of a publication to "contemporary state standards."
> *Even in the ordinary criminal law, we doubt that the legisla-
> ture can make it a crime to conduct oneself in a manner that
> falls short of "contemporary state standards."* In a law censor-
> ing speech, writing, or publication, such an indeterminate test
> is intolerable.

conviction cannot rest on a jury's ad hoc, ad hominem application of community standards.[30] An obscenity conviction must be consistent with "substantive constitutional limitations." *Id.,* p 160.

The common sense of the community definition is devoid of substantive limitations. The common sense of the community definition is the *Miller* definition for obscenity *minus* any substantive limitations like those found in *Miller.* It is, in short, the test for obscenity squarely rejected in *Jenkins.*

The Supreme Court of California recently observed:

> The obscenity test as developed in Supreme Court decisions was *not framed to measure noncommunicative conduct;* with no audience to be aroused pruriently or redeemed socially, *all that is left of the test is the appeal to contemporary community standards. That appeal is the vaguest part of the test and, standing alone, does not provide a sufficient standard to judge the criminality of conduct.* [*Pryor, supra,* p 250.]

IV

In *Lino,* the jury was instructed that the prosecutor must prove beyond a reasonable doubt that the act was "committed openly and in a public place," and, apparently, so found.[31]

---

[30] The political, literary, scientific, and artistic value of a work is judged *not* by community standards, but according to the "reasonable person" standard. *Pope v Illinois,* 481 US 497, 501; 107 S Ct 1918; 95 L Ed 2d 439 (1987).

[31] The jury was instructed:

> The Defendant is charged with having committed an act of gross indecency with another male. The Defendant pleads not guilty to this charge. To establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt:

We all agree, that a person, man or woman, who commits fellatio, in public has committed an "act of gross indecency."

### A

The meaning of "public" is not, however, self-evident. The New York Court of Appeals explained that, "[b]ecause the term 'public place' has no cut-and-dried meaning, it is necessary to interpret and apply the statute [banning lewd public conduct] in a manner that comports with its purpose." *People v McNamara,* 78 NY2d 626, 633; 585 NE2d 788 (1991).

The New York Court of Appeals held that New York's public lewdness statute applies only where the "objective circumstances" establish that lewd acts "can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect." *McNamara, supra,* pp 634-635. In the words of New York's highest court:

> That a member of the public may pass by is certainly part of the essence of a public place, and the harm to such a person's sensibilities is precisely that aimed at by the statute. Conversely, where no such harm is likely, the statute is not violated. [*Id.,* p 633.]

The Supreme Judicial Court of Massachusetts and the California Supreme Court have similarly defined the term "public place" as set forth in

First, the Defendant must have voluntarily committed an oral sexual act with another male person. An oral sexual act means that the mouth or tongue of one person was placed in contact with the sexual organs, the penis, of another person. Second, if you find that such an act was committed, then you must further determine that the act was committed openly and in a public place.

public lewdness statutes. The Supreme Judicial Court of Massachusetts held that to establish the "public place" element of public lewdness, "[t]he Commonwealth must prove that the likelihood of being observed by a casual passerby must have been reasonably foreseeable to the defendant or, stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret." *Commonwealth v Ferguson,* 384 Mass 13, 16; 422 NE2d 1365 (1981). In *Pryor, supra,* p 256, the California Supreme Court held that its public lewdness statute prohibited only a limited range of conduct, and only when "the actor knows or should know of the presence of persons who may be offended by his conduct."

This Court should follow the lead of the highest courts of New York, Massachusetts, and California, and hold that, to establish the "public place" element of gross indecency, the prosecutor must prove that when the sexual act was committed, the objective circumstances indicated that the conduct could have been seen, and was likely to have been seen, by members of the public.[32]

### B

The jury in Lino's trial was not properly instructed concerning the "public place" element of

---

[32] The commentary to the public lewdness section of the Model Penal Code states that

the rationale of this provision is to prevent the open flouting of societal conventions, it should not condemn as debauchers of public morality persons who desire privacy and who take reasonable measures to secure it. [American Law Institute, Model Penal Code, § 251.1, p 452.]

A couple who drive out to a secluded "lover's lane" and engages in sexual conduct should not be said to have committed an act of gross indecency in a public place if a lost hiker happens to stumble across them.

gross indecency.[33] After deliberating for approximately one-half hour, the jury asked the judge, "[w]hat constitutes a public place and is being in a personal vehicle the same as being in a public place?" The judge responded that, "[t]here is no exact answer to the questions that you have asked. Those judgments are entrusted to you for your sound judgment. I will tell you generally that a public place is *one to which the public has an open view or access.*" (Emphasis added.)

The judge's response did not inform the jury that a public place, in addition to being open to the public's view, is a place in which one would reasonably expect to find members of the public or casual passersby.[34]

## V

One of my colleagues' opinions suggests that Brashier's conduct might be chargeable as a felony punishable by imprisonment for up to twenty

[33] No member of the public inadvertently witnessed the sexual act. Nor does it appear that it was likely that a member of the public would have inadvertently witnessed the act.

If an automobile had unexpectedly driven into the overflow parking lot, Lino might have ceased fellating the customer.

When the officer identified himself, the driver started his vehicle and drove away at a high rate of speed.

There is no evidence that the use of the parking lot as a "lover's lane" had become sufficiently notorious that adults or minors congregated near the opening of the fence and vied with each other for an opportunity to stand where the officer stood so that they could observe such sexual activity.

The prosecution presented evidence that, at the time of Lino's conduct, the restaurant connected to the overflow parking lot in which Lino's conduct occurred, was open. This evidence alone is not sufficient to support a finding that it was reasonably likely that members of the public would in fact be present in the overflow parking lot. The parking lot was, after all, an *overflow* lot.

[34] See *McNamara, supra,* p 793 where the Court said that an information that failed to "establish that [parked] vehicle was situated in a place where it was likely that respondent's lewd acts would be observed" by a member of the public was insufficient.

years.[35] The penal statute adverted to[36] provides such a penalty on conviction of causing a person who is less than eighteen years of age to engage in "child sexually abusive activity for the purpose of producing any child sexually abusive material . . . ." The term "child sexually abusive material" is defined as meaning a photograph, film, slide, electronic visual image, or sound recording of a child engaging in sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity, as each of those terms is specifically defined in the statute. The record does not, however, indicate that the sexual activity charged in *Brashier* was photographed or otherwise recorded so that it could be viewed on a subsequent occasion.

The statute also subjects to prosecution with a like penalty "a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity *or* child sexually abusive material . . . ." There was no "audience" other than Brashier, and it does not appear that the conduct of the minors was for the purpose of Brashier's sexual gratification or stimulation.[37]

That colleague also states that the majority of this Court today defines gross indecency as including "any and all conduct that a jury thinks is indecent,"[38] and "[d]espite contrary protestations, [has] adopt[ed] a broad view of the statute,"[39] and "[f]aced with the unattractive prospect of finding Brashier's conduct outside the reach of the gross

[35] Opinion of BOYLE, J., *post*, pp 603-604.

[36] MCL 750.145c(2); MSA 28.342a(2).

[37] See ns 13-16 and accompanying text.

[38] Opinion of BOYLE, J., *post*, p 614.

[39] *Id.*, p 616.

indecency statute,"[40] the majority has solved the problem by saying in effect, that gross indecency is what four members of this Court say it is.

In *Howell, supra,* a plurality of this Court defined gross indecency as including oral and manual sexual acts committed "with" a person under the age of consent. The three concurring judges in the superpanel decision in *Brashier* read the *Howell* definition as permitting prosecution of Brashier on the basis that his conduct involved a manual sexual act committed by Goike "with" a person under the age of consent even though the person under the age of consent did not touch Goike.[41]

I would reverse and remand for a new trial in *Lino,* and join in remanding for trial in *Brashier.*

BOYLE, J. (*concurring in part and dissenting in part*). This case is about the scope of the statute punishing gross indecency. It is my position that the offense is limited to specific conduct. The Court reads the statute as if the Legislature intended it to be general morals legislation. Specifically, the result of today's decision is that the statute will punish the conduct this Court determines to be immoral. Therefore, I dissent.

I agree that defendant Lino's conviction should be affirmed. I write separately, however, because I disagree with the Court's conclusion in *Brashier* that the gross indecency statute covers the conduct alleged.

The behavior Brashier is alleged to have procured appears to be proscribed by MCL 750.145c; MSA 28.342a,[1] which provides that a person who

---

[40] *Id.,* p 617.

[41] *Brashier, supra,* p 680, n 1.

[1] MCL 750.145c(2); MSA 28.342a(2), reads as follows:

A person who persuades, induces, entices, coerces, causes, or

"finances" any "child sexually abusive activity," specifically defined to include "sadomasochistic abuse, masturbation, [or] passive sexual involvement," is guilty of a felony punishable by up to twenty years imprisonment. It also might have been encompassed by the indecent liberties statute, formerly MCL 750.336; MSA 28.568. This statute was repealed by the Legislature in conjunction with adoption of the criminal sexual conduct statutes. 1974 PA 266.

> knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, *or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity* or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $20,000, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

"Child sexually abusive activity" means a child engaging in a listed sexual act. MCL 750.145c(1)(f); MSA 28.342a(1)(f). Those acts include not only "sadomasochistic abuse," but also "passive sexual involvement."

As the testimony is understood by the Court—"[t]he minors would hit Goike with a stick" while he was masturbating, *ante* at 574—this case involves "[s]adomasochistic abuse." That term is defined as "[f]lagellation or torture, real or simulated, for the purpose of real or simulated sexual stimulation or gratification, by or upon a person," MCL 750.145c(1)(j); MSA 28.342a(1)(j).

"Passive sexual involvement" is defined by the statute to include any "act . . . which exposes another person . . . to an act of . . . sadomasochistic abuse [or] masturbation . . . because of the proximity of the act to that person, for the purpose of real or simulated overt sexual gratification or stimulation of 1 or more of the persons involved." The legal question whether the minor is "engaging" in the "passive sexual involvement" as required by subsection 1(h), by being in "the proximity of the act [masturbation]," has not been answered. However, the evidence indicates that defendant Brashier financed the presence of the minors.

This statute was amended in 1988, specifically eliminating the requirement that child sexually abusive activity be "commercial." See 1988 PA 110, § 1. Thus the suggestion that this statute might not apply to Brashier because "[t]here was no 'audience' other than" him, opinion of LEVIN, J., *ante* at 602, appears to be incorrect.

Whether the conduct is punishable under a different statute, however, is not the issue here. On the proofs submitted,[2] defendant Brashier was not properly bound over on the charge of gross indecency. The statute does not apply to any "unnatural" or immoral sexual act. Rather, it applies only to fellatio between males,[3] of which Brashier is not accused. We are not authorized to create a felony by interpretation. Therefore, although the defendant may be tried on several charges,[4] some of which he currently faces,[5] the bindover on the specific charge of gross indecency was error.

I

The question presented involves the scope of Michigan's gross indecency statute,[6] specifically,

[2] The proofs at examination show a curiously consistent pattern of denial of any sexual contact. If the proofs at trial indicate that contact in fact occurred, the prosecutor may seek leave to amend the information. MCL 767.76; MSA 28.1016.

[3] Historically the statute has never been applied to consensual sexual activity between two persons in privacy.

[4] The proofs appear to implicate not only the indecent exposure statute, MCL 750.335a; MSA 28.567(1), but also the "disorderly person" statute, MCL 750.167(i); MSA 28.364(i), and the statute that proscribes admitting a person into a place for purposes of lewdness, MCL 750.449; MSA 28.704.

[5] See MCL 750.145; MSA 28.340 (contributing to the delinquency of children); MCL 750.145a; MSA 28.341 (accosting, enticing, or soliciting a child for immoral purposes); MCL 750.157a; MSA 28.354(1) (conspiracy).

[6] These cases involve MCL 750.338; MSA 28.570, which prohibits gross indecency between male persons:

> Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years, or by a fine of not more than $2,500.00, or if such person was at the time of the said offense a sexually delinquent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life.

whether it applies to immoral acts generally, such as procuring a male to vomit or urinate on another male or masturbate in the presence of a male who is a minor, or only to a specific act or acts.

### A. THE PROBLEM ILLUSTRATED—THE "CRIME AGAINST NATURE"

Courts have faced this precise question with respect to statutes that proscribe "sodomy" or "the crime against nature." Jurisdictions differ regarding whether such terms are limited to anal intercourse, or are to be broadly interpreted to cover all "unnatural" acts, including bestiality, fellatio, and cunnilingus. In *Rose v Locke,* 423 US 48, 50-51; 96 S Ct 243; 46 L Ed 2d 185 (1975), the Supreme Court seemed to agree that "jurisdictions differ as to whether 'crime against nature' is to be narrowly applied only to those acts constituting the common-law offense of sodomy, or is to be broadly interpreted to encompass additional forms of sexual aberration." *Id.* at 50-51. The issue in that case was whether the Tennessee statute the respondent had been convicted of violating applied to cunnilingus, which would not have constituted sodomy at the common law. The Court reinstated the respondent's conviction because Tennessee had adopted the broader version of the statute, *id.* at 53, which the Court held was not unconstitutionally vague, *id.* at 52.

Although it was not uncommon in other states, including Tennessee, to add fellatio and cunnilingus to the offense of sodomy by interpretation,[7] Michigan followed the narrow approach by sepa-

Nearly identical statutes prohibit gross indecency between female persons, see MCL 750.338a; MSA 28.570(1), and gross indecency between male and female persons, see MCL 750.338b; MSA 28.570(2).

[7] See, e.g., *State v Altwater,* 29 Idaho 107; 157 P 256 (1916); *Herring*

rately proscribing fellatio and sodomy. In *People v Schmitt,* 275 Mich 575, 577; 267 NW 741 (1936), this Court reversed the defendant's conviction for sodomy because the prosecution proved only "penetration . . . per os," or fellatio, not sodomy. The Court found that the Legislature had shown no disposition to depart from the common-law definition, observing that this conclusion was "evidenced further" by the fact that in 1931 the Legislature reenacted 1903 PA 198, which prohibited the offense of fellatio. *Id.* According to Professors Perkins and Boyce, Michigan's narrower approach

is the logical position since sodomy was not an offense under the common law of England and is an offense under American common law because of the early English statute which did not apply where the act is in the mouth. [Criminal Law (3d ed), p 466.]

Because the scope of the offense is specifically defined, it may not be expanded on the basis of what a judge or jury thinks it ought to encompass. As the Colorado Supreme Court explained in a case with facts identical to *Schmitt,* "[w]e cannot, because of our belief that the act charged against the defendant is even more vile and filthy than sodomy, stretch the sodomy section of the statute to include it." *Koontz v People,* 82 Colo 589, 594; 263 P 19 (1927).

### B. THE MICHIGAN GROSS INDECENCY STATUTES

Although sodomy does not as a matter of law

*v State,* 119 Ga 709; 46 SE 876 (1904); *State v Dietz,* 135 Mont 496; 343 P2d 539 (1959); *State v Fenner,* 166 NC 247; 80 SE 970 (1914); *Berryman v State,* 283 P2d 558 (Okla Crim App, 1955); *Blankenship v State,* 289 SW2d 240 (Tex Crim, 1956); *State v Phillips,* 102 Ariz 377; 430 P2d 139 (1967); *Hogan v State,* 84 Nev 372; 441 P2d 620 (1968).

include fellatio, *People v Schmitt, supra,* it does not inexorably follow that gross indecency includes only fellatio. This case hinges on the question whether the term "gross indecency" is to be construed broadly or narrowly.[8]

The answer to this question begins with an examination of the statutory scheme. Gross inde-

[8] The Court of Appeals has read the term to protect interests in privacy against the possibility that the statute could be applied to truly private conduct between consenting adults. As explained in *People v McCaleb,* 37 Mich App 502; 195 NW2d 17 (1972), though gross indecency includes acts of fellatio, it does not include all acts of fellatio. The issue in that case was whether it was error requiring reversal "for the trial court to instruct the jury that as a matter of law the act of fellatio is prohibited by the gross indecency statute, rather than leaving that determination to the jury as a basic element of the crime to be ascertained by the trier of fact." *Id.* at 504. The Court held that it was error:

The jury's function in this case as the trier of fact was to determine that (1) defendant had engaged in fellatio with a female, and (2) fellatio between a male and a female is conduct which the common sense of society regards as indecent and improper. The effect of the trial judge's charge was to eliminate the second element of the crime, "whether the conduct was indecent," from the purview of the jury. [*Id.* at 507.]

As the second sentence implies, the "common sense test" was a second element of the offense, limiting the scope of the statute to acts of fellatio that are found by a jury to be indecent:

In [*People v*] *Dexter* [6 Mich App 247; 148 NW2d 915 (1967)], we did not hold that as a matter of law fellatio is prohibited by the gross indecency statute. What this Court did in *Dexter* was affirm a jury's determination as trier of fact that the act of fellatio violated the gross indecency statute. Dictum from *People v Schmitt,* 275 Mich 575, 577 (1936), was cited in *Dexter* at 250, for the proposition that "fellatio is prohibited by the gross indecency statute." This statement, however, fails to tell us whether fellatio is prohibited as a matter of law or only upon jury determination. This statement in *Schmitt* relied on *People v Swift,* 172 Mich 473 [138 NW 662] (1912), for its authoritative basis. *Swift,* however, was a jury case in which the trier of fact determined in the first instance that the gross indecency statute had been violated. It is to be noted that nowhere in *Swift* is fellatio mentioned as the type of conduct prohibited by the act. *Dexter* and *Schmitt,* resting as they do on *Swift,* thus fail to resolve the issue posed by the case at bar. [*Id.* at 505.]

cency between males was not proscribed by statute until 1903.[9] See 1903 PA 198, § 1. In 1931, that statute was reenacted as part of the criminal code. See 1931 PA 328, § 338.

The offenses of gross indecency between females and gross indecency between males and females were first enacted in 1939, see 1939 PA 148, only three years after a decision of this Court carrying implications for the original statute. In *Schmitt,* 275 Mich 577-578, which followed the historical narrow interpretation of the sodomy statute, the Court noted that "the offense of *fellatio* is now prohibited by [the gross indecency statute]." The fact that the Legislature thereafter employed identical language in the companion statutes lends support to the argument that the statute applies only to oral-genital contact.

The very addition of those two offenses, which meant that "gross indecency" was prohibited regardless of the gender of the participants, provides additional support for the narrow interpretation. If any sexual act could constitute the offense, then the 1939 act would have instituted decency regulation for all sexual behavior. Though this interpretation of the statutes would not necessarily have prohibited all sex, it would seem to mean that any person who had sex could be bound over and tried on a felony charge. The outrageousness of this possibility is stronger evidence that the Legislature intended the statutes to apply only to a specific act or acts.

While there is a textual argument[10] for applica-

---

[9] In contrast, the statute proscribing "the abominable and detestable crime against nature" appears to date from Michigan's early years of statehood. A statute practically identical to the current one can be found at 1846 RS, ch 158, § 16. This Court has long held that this statute enacted the common-law offense. See *People v Hodgkin,* 94 Mich 27; 53 NW 794 (1892).

[10] For example, unlike the sodomy statute, which proscribes "*the*

tion of the statute to any "unnatural" or immoral act, that argument is belied by the number and variety of statutes addressing specific sexual behavior.[11] The Legislature's awareness of the numerous offenses, and the distinctions between them, is illustrated in 1952 PA 73, which amended 1948 CL 750.85 to apply to "[a]ny person who shall assault any female with intent to commit the crime of rape, and any person who shall assault another person with intent to commit the crime of sodomy or gross indecency . . . ." Another example is MCL 750.145a; MSA 28.341, which makes it a misdemeanor to "accost, entice, or solicit a child under the age of 16 with intent to induce or force said child to commit an immoral act, or to submit to an act of sexual intercourse, or an act of gross indecency, or any other act of depravity or delinquency . . . ." The statute contemplates an "act of depravity" that is not an act of gross indecency.

Michigan case law also supports this view. Although early opinions of this Court hesitate to provide explicit details, they reflect a certainty

abominable and detestable crime against nature," MCL 750.158; MSA 28.355, the statute at issue proscribes "*any* act of gross indecency," MCL 750.338; MSA 28.570.

[11] Consider the different statutes addressing sexual behavior in the 1948 Compiled Laws—the last compilation before the enactment of the criminal sexual conduct statutes and accompanying repeal of many older statutes. See, e.g., 1948 CL 750.13 (enticing away a female under age 16); 1948 CL 750.140 (children; exhibition, employ or apprentice for immoral purpose); 1948 CL 750.85 (assault with intent to rape); 1948 CL 750.90 (sexual intercourse under pretext of medical treatment); 1948 CL 750.145a (accosting, enticing or soliciting a child for immoral purposes); 1948 CL 750.145b (same, second offense); 1948 CL 750.158 (crime against nature); 1948 CL 750.333 (incest); 1948 CL 750.335 (lewd cohabitation, gross lewdness or indecent exposure); 1948 CL 750.336 (female child indecent liberties); 1948 CL 750.338a (gross indecency between female persons); 1948 CL 750.338b (gross indecency between male and female); 1948 CL 750.339 (males under 15, debauching by females); 1948 CL 750.340 (debauching by males); 1948 CL 750.341 (female patient in institution for insane, ravish, abuse); 1948 CL 750.342 (female ward, carnal knowledge); 1948 CL 750.520 (rape).

that "particular conduct is rendered criminal by it." *People v Carey,* 217 Mich 601, 603; 187 NW 261 (1922). As illustrated by the Court of Appeals in *People v Dexter,* 6 Mich App 247, 250-251; 148 NW2d 915 (1967):

> Appellant raises the question of whether the counts charging gross indecency merged into the sodomy counts. Michigan follows the common-law definition of sodomy. *People v Hodgkin* (1892), 94 Mich 27 [53 NW 794]. At common law, sodomy covered only copulation *per anum.* "Penetration *per os* did not constitute sodomy, or the 'crime against nature,'" *People v Schmitt* (1936), 275 Mich 575, 577 [267 NW 741], and cases therein cited. The legislature has shown no inclination to depart from the common-law definition of sodomy. Penetration *per os,* fellatio, is prohibited by the gross indecency statute. *People v Schmitt, supra.* The elements of gross indecency and sodomy differ.

Greater detail was recounted in *People v Myers,* 161 Mich App 215, 219-220; 409 NW2d 788 (1987), in which the Court held that the statute did not apply to the touching of another's genital area over clothing:

> [P]ost-*Dexter* appellate decisions that have construed the gross indecency statute at issue have arisen from a factual background in which fellatio occurred. . . . No cases were found in which another sexual act, i.e., the massage of fully covered male genitalia, has occurred.
>
> [P]rosecutions brought under other gross indecency statutes which also do not define an "act of gross indecency," namely MCL 750.338a; MSA 28.570(1) (gross indecency between females) and MCL 750.338b; MSA 28.570(2) (gross indecency between a male and a female) have involved acts of fellatio or cunnilingus. *People v Livermore,* 9 Mich App 47, 56-59; 155 NW2d 711 (1967) (sexual

conduct between two females); *People v McCaleb,*
37 Mich App 502; 195 NW2d 17 (1972), lv den 389
Mich 784 (1973) (fellatio); *People v Rea,* 38 Mich
App 141; 195 NW2d 809 (1972), lv den 388 Mich
795 (1972) (cunnilingus); *People v Roy Edwards,* 58
Mich App 146; 227 NW2d 263 (1975), reversed in
light of *People v Howell, supra,* 396 Mich 825; 238
NW2d 536 (1976) (fellatio); *People v Towlen,* 66
Mich App 577; 239 NW2d 668 (1976), lv den 397
Mich 831 (1976) (fellatio).

In each of the above cases (except *Livermore,*
which did not involve a determination of whether
the sexual act committed constituted gross inde-
cency), the trier of fact determined that the act
was grossly indecent in light of community mores.

The only case from this Court to suggest that
the gross indecency statutes proscribe "unnatural"
acts other than fellatio and cunnilingus was *Peo-
ple v Howell,* 396 Mich 16, 24; 238 NW2d 148
(1976). That case and its companion case, *People v
Helzer* actually involved forced fellatio and fellatio
with a minor, respectively. The Court held that
the statute was not unconstitutionally vague as
applied to the defendants because "the statutes
have long been applied in the courts of this state
to acts of forced fellatio and fellatio with a minor."
*Id.* at 21. However, three justices would have
adopted a definition of gross indecency that encom-
passed acts that had not been previously held to be
"acts of gross indecency": "manual sexual acts
committed without consent or with a person under
the age of consent or any ultimate sexual act
committed in public." *Id.* at 24. Because the three
other justices did not sign this section, it is not
binding precedent.[12] *Negri v Slotkin,* 397 Mich 105,
109; 244 NW2d 98 (1976).

[12] Nor has it been treated as such. See, e.g., *People v Kalchik,* 160
Mich App 40, 44; 407 NW2d 627 (1987); *People v Austin,* 185 Mich
App 334, 338; 460 NW2d 607 (1990).

The dispute we now face was perpetuated as the Court of Appeals wrestled with the assertion in *Howell* that the offense of gross indecency encompassed acts that the "common sense" of society test would regard as indecent and improper. See 396 Mich 23. Some panels read *Dexter* as impermissibly endorsing a broad common sense of society test and held that the gross indecency statute did not apply to the act of touching a covered groin. See, e.g., *People v Emmerich,* 175 Mich App 283; 437 NW2d 30 (1989). Others noted that the gross indecency statute had only been applied to cases involving oral sexual acts. See, e.g., *People v Myers, supra,* 161 Mich App 221. Still others found in *Carey* and *Dexter* a broad common-sense test to find mutual masturbation in public a question "left to the discretion of the jury," and thus chargeable as gross indecency. See, e.g., *People v Austin,* 185 Mich App 334, 340; 460 NW2d 607 (1990).

II

The separate opinion rejects the historical definition of the scope of the statute and asserts that gross indecency has historically been defined by the common sense of the community. Opinion of LEVIN, J., *ante* at 594-598. The author then rejects the common sense of the community test and holds that gross indecency includes masturbation in the presence of minors. *Id.* at 580, 594-598.

The suggestion that the scope of gross indecency as defined by this Court[13] was "the common sense of the community" is a straw man. That approach postulates that the requirement of indecency has not simply been *an* element of the statutory of-

[13] *People v Carey, supra,* and *People v Hicks,* 98 Mich 86; 56 NW 1102 (1893).

fense, but that it has been *the only* element, and that the offense has thus included any and all conduct that a jury thinks is indecent. Compare *supra,* p 608, n 8. The "common sense of the community" test finds no support in *Carey.*[14] The issue was not the scope of the offense, but the sufficiency of the information. The Court held that it was unnecessary to name the particular conduct involved, and that it was sufficient simply to track the language of the statute: "The information in the language of the statute informed defendant of the crime for which he was to be tried. It should not state the evidence by which it is to be proved, nor should it describe the particular act charged. The gross indecency of the subject forbids it." 217 Mich 603. The Court cited the passage from *Hicks* about the test that applied in prosecutions for the distinct offenses of indecent liberties and indecent exposure, as well as the passage from *People v Girardin,* 1 Mich 90 (1848), concerning obscenity, merely to support the unremarkable proposition that the charging document need not state all details explicitly to be legally sufficient.

Defining the offense of indecent liberties, as the Court did in *Hicks,* is a very different matter from defining gross indecency. It appears that the offense of indecent liberties, along with indecent exposure, was defined in terms of the "common sense of the community." See, e.g., *People v Healy,* 265 Mich 317, 319; 251 NW 393 (1933); *People v Visel,* 275 Mich 77, 79; 265 NW 781 (1936); *People v Noyes,* 328 Mich 207, 211; 433 NW2d 331 (1950) (quoting actual jury instructions). This was possible because the scope of the offense has built-in limitations. Indecent exposure, for example, is lim-

---

[14] Nor does the majority cite a single case before the *Howell* holding that the scope of these statutes is defined by the "common sense of the community."

ited to cases involving exposure—a concept famil-
iar to everyone. Though the term "indecent liber-
ties" may be slightly more amorphous, it seems
that it was commonly understood to encompass
touching. With that understanding, it is easy to
see how society shared, and probably continues to
share, a common sense about what exposure or
which liberties with children are "indecent."[15] In
that sense, those terms need no further definition.
Establishing "common sense" as the test only
confirms this.

The opposite is true of "gross indecency" or "the
crime against nature." These terms are not defini-
tions that limit the type of conduct to which a jury
will apply its common-sense judgment. They are
euphemisms for the conduct prohibited by them.
"Crime against nature" is a euphemism for anal
intercourse. As explained in Spence, *The law of
crime against nature,* 32 NC L R 312, 313 (1954),
the first English statute on the subject, passed in
1533, prohibited as a felony the "detestable and
abominable vice of buggery committed with man-
kind or beast." Some American states, however,

---

[15] A good illustration is *People v Lakin,* 286 Mich 282; 282 NW 149
(1938), in which this Court rejected the defendant's argument that the
allegations at the preliminary examination were insufficient to bind
him over for trial on the charge of indecent liberties. A twelve-year-
old girl had testified that the defendant asked her to engage "in
indecent conduct, and offered her a quarter if she would accede to his
wishes. He then placed a hand on her knee." *Id.* at 283.
This Court's explanation for why the alleged conduct could consti-
tute indecent liberties highlights the role that common sense played
in defining the offense:

Had the girl's parents or any decent adult been present,
there would have been objection not to the touching alone, but
to the touching accompanied by defendant's indecent proposal.
Under some circumstances a given act may be permissible, yet
when that same act is accompanied by improper suggestions or
proposals and occurs in surroundings such as are here dis-
closed, it assumes a new aspect and becomes criminal in
character. [*Id.* at 284.]

seem to have "found the word 'buggery' too offen-
sive to be seen in the code." *Id.* See also Perkins &
Boyce, Criminal Law (3d ed), p 465 (citing states
"which have used some such designation in lieu of
a name").

The debate regarding the common sense of the
community test in the context of gross indecency
misfocuses the inquiry and obscures the precise
issue in this case. That issue is what the term
"gross indecency" is a euphemism for, and
whether the statute encompasses the conduct of
defendant Brashier. Gross indecency is a euphem-
ism for fellatio and cunnilingus. As noted, the
"common sense of the community" has not histori-
cally defined the scope of the gross indecency
statutes. The holding of the Court in *Dexter,* 6
Mich App 250, for example, as opposed to the dicta
regarding common sense of the community, was
that "[p]enetration *per os,* fellatio, is prohibited by
the gross indecency statute" and that that offense
and sodomy were distinct offenses. *Id.*

The second flaw in the separate opinion is even
more fundamental. Despite contrary protestations,
the opinion adopts a broad view of the statute.
There is no support in the almost one-hundred-
year history of the statute for its application to
sadomasochistic activity that involves no sexual
contact between the victims and the perpetrators.

To state it differently, the separate opinion
would "overrule" the broad interpretation of the
statute, only to apply it broadly to conduct that is
not even covered by the definition proposed by
three justices in *Howell.*[16] In fact, the sadomaso-

[16] The definition proposed by three justices in *Howell,* 396 Mich 24,
would have prohibited "oral and manual sexual acts committed
without consent or with a person under the age of consent or any
ultimate sexual act committed in public." Particularly in light of the
final phrase that mentions "any ultimate sexual act," the limitation

chistic abuse of Mr. Goike is conduct to which the statute has never been applied.

Faced with the unattractive prospect of finding Brashier's conduct outside the reach of the gross indecency statute, the problem is solved by four members of this Court saying that gross indecency is what Brashier did. The result contradicts the rationale of the separate opinion, and assumes authority we do not possess. No matter how reprehensible the alleged conduct, the power to create crimes and establish penalties rests exclusively with the Legislature.

### III. CONCLUSION

The common sense of the community does not define the conduct proscribed by the gross indecency statute. The statute covers only oral-genital contact that a jury finds in the circumstances is indecent. Because this conduct was not shown at the preliminary examination, it was error to bind over the defendant on this charge. I dissent, and would remand for further proceedings consistent with this opinion.

BRICKLEY, J., concurred with BOYLE, J.

RILEY, J. (*concurring in part and dissenting in*

of the offense to "oral or manual sexual acts" with minors seems rather definite.

The word "with" parallels language used in the Criminal Sexual Conduct statutes. The CSC statutes require "sexual penetration with another person," see, e.g, MCL 750.520b(1); MSA 28.788(2)(1), or "sexual contact with another person," MCL 750.520c(1); MSA 28.788(3)(1). These terms contemplate penetration into the genital or anal openings, and intentional touching of the intimate parts or clothing covering them, respectively. MCL 750.520a(k), (*l*); MSA 28.788(1)(k), (*l*). They do not suggest that the act criminalizes sexual intercourse or sexual contact in the presence of a minor. Rather, their common-sense construction suggests quite clearly that, like gross indecency, "with" refers to sexual conduct between persons, not in the presence of them.

*part*). I join the memorandum opinion insofar as it finds the statute[1] at issue not unconstitutionally vague as applied, affirms Lino's conviction, and finds Brashier's conduct prohibited by the gross indecency statute. I respectfully dissent, however, because I believe gross indecency is defined by the common sense of the community, i.e., it is a question for the trier of fact.

I

A

MCL 750.338; MSA 28.570 mandates:

Any male person who, in public or in private, commits or is a party to the commission of or procures or attempts to procure the commission by any male person of any act of gross indecency with another male person shall be guilty of a felony
. . . .

"When construing statutory provisions, the task of this Court is to discover and give effect to the intent of the Legislature. Legislative intent is to be derived from the actual language of the statute, and when the language is clear and unambiguous, no further interpretation is necessary." *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 (1988) (citations omitted). If judicial construction is necessary, the Court must discern the Legislature's intent by examining "the object of the statute, the harm which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose." *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989).

---

[1] MCL 750.338; MSA 28.570.

B

At issue in the instant case is the definition of "gross indecency." While a majority rejects a definition formed by a common sense of the community, no majority definition emerges. Two justices[2] refuse to define the term. Justice LEVIN would define gross indecency under the *People v Howell*[3] test and extend the scope of "manual sexual act[s] . . . 'with a person under the age of consent' " to include manual sexual acts, e.g., masturbation, in the presence of persons under the age of consent, even though this act was not done to or by persons under the age of consent. *Ante* at 580, n 4. Justice BOYLE, joined by Justice BRICKLEY, would limit gross indecency to oral-genital contact. I believe all three approaches are flawed. In fact, this Court has long held that the phrase gross indecency constitutes behavior offensive to the common sense of the community:[4]

> " 'Indecent and improper liberties with the person of such child' means such liberties as the common sense of society would regard as indecent and improper. In this case, as in *State v Millard,* 18 Vt [571] 577 [1846], it may be said that 'no particular definition is given by the statute of what constitutes this crime. The indelicacy of the subject forbids it, and does not require of the court to state what particular conduct will constitute the offense. The common sense of the community, as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it.' " [*People v Carey,* 217 Mich 601,

---

[2] CAVANAGH, C.J., and MALLETT, J.

[3] 396 Mich 16, 24; 238 NW2d 148 (1976).

[4] Contrary to Justice BOYLE's limited interpretation of the statute, the Legislature never intended only to prohibit cunnilingus and fellatio.

602-603; 187 NW 261 (1922), quoting *People v Hicks,* 98 Mich 86, 90; 56 NW 1102 (1893).][5]

Hence, contrary to the approach that refuses to define "gross indecency," the approach adopting and extending *Howell,* and the approach limited to oral-genital contact, gross indecency is determined by reference to the common sense of the community, i.e., it is a question for the trier of fact.

Certainly many gross indecency cases refer to or deal with oral sexual acts; however, no Michigan court has ever held that gross indecency is limited solely to such acts. Similarly, while this Court has held that sodomy does not constitute gross indecency, see, e.g., *People v Schmitt,* 275 Mich 575; 267 NW 741 (1936), that finding has not limited the definition of gross indecency. In fact, we simply held that the crime of sodomy (then termed " 'the abominable and detestable crime against nature' ") did not include penetration per os,[6] but did not hold that gross indecency included only penetration per os. *Id.* Likewise, the Court in *People v Dexter,* 6 Mich App 247; 148 NW2d 915 (1967), held only that fellatio is prohibited by the gross indecency statute, not by the sodomy statute. The Court did not hold that gross indecency is limited simply to oral sexual acts. *Id.* at 250-251.

The purpose of the gross indecency act is to prohibit sexual conduct that is offensive to the community. "The word 'indecent' is a common and general one. As ordinarily understood, it includes anything which is lewd or lascivious, obscene or grossly vulgar, unbecoming, unseemly, unfit to be

[5] While the purpose of the statute interpreted by *Hicks* was to punish male persons who take "indecent and improper liberties with the" persons of female children, the definition eventually defined the gross indecency statute at issue. See, e.g., *People v Dexter,* 6 Mich App 247, 253; 148 NW2d 915 (1967).

[6] *Id.* at 576.

seen or heard, or which violates the proprieties of language or behavior." 50 Am Jur 2d, Lewdness, Indecency, and Obscenity, § 2, pp 451-452.

> Statutes generally confer authority upon municipalities to preserve and protect the public morals, and to provide for the punishment of persons conducting themselves indecently in the streets and other public places, to the annoyance of the citizens. It has been observed that the decency which is protected by a statute is that which the predominant majority of minds agree upon. [*Id.* at 452.]

Indeed, even the lead opinion in *People v Howell*, 396 Mich 16; 238 NW2d 148 (1976), which would have redefined and narrowly construed the statute, would have encompassed more than merely oral sexual acts. It would have redefined gross indecency to include:

> oral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sexual act committed in public. [*Howell, supra* at 24 (LEVIN, J.).][7]

Thus, I agree with the memorandum opinion that the statute includes more than just oral-genital acts. The purpose and history of the statute reveal that while oral sexual conduct may constitute gross indecency, other acts may also violate the statute. However, unlike the memorandum opinion, I leave this latter determination to the trier of fact, i.e., whether gross indecency is con-

---

[7] I reject Justice LEVIN's formulation, however, because it is fashioned from whole cloth. Justice LEVIN's standard, although creating a principled rule, is unprincipled: it is not derived from history, jurisprudence, legislative intent, or the text of the statute. Indeed, the statute prohibits gross indecency "in public or private," but Justice LEVIN has bifurcated the statute to mandate a "public" element in some cases.

duct violative of the common sense of the community.

## II

Lino's conduct could very well be considered gross indecency by a jury. Under the *Carey* standard, a reasonable jury should be permitted to find that fellatio in a well-lit parking lot next to an open restaurant that is visible by the naked eye offends the common sense of society. Fellatio, as noted by the memorandum opinion, has long been deemed gross indecency by Michigan courts. See, e.g., *Howell, supra* at 22 (finding forced fellatio and fellatio performed on a nine-year-old boy gross indecency); *People v Myers,* 161 Mich App 215, 220; 409 NW2d 787 (1987).[8] Indeed, even under the *Howell* standard, fellatio should be understood as an "ultimate" sex act. See, e.g., *Howell, supra* at 22.

Because Lino's actions constituted gross indecency, I join the memorandum opinion affirming his conviction.

## III

Similarly, Brashier's conduct could be found by a jury to constitute gross indecency. Brashier on four separate occasions approached fourteen- or fifteen-year-old boys and offered them money if they would accompany him to "beat up a queer." Brashier would approach the boys, feed them

---

[8] In fact, a number of courts have approved instructions which, as a matter of law, instructed that fellatio is gross indecency. *People v Edwards,* 396 Mich 825, 826; 238 NW2d 536 (1976) ("The instruction that an assault with intent to perform fellatio upon the victim would constitute an assault with intent to commit gross indecency was not erroneous"); *People v McCaleb,* 37 Mich App 502, 507; 195 NW2d 17 (1972); *People v Ferguson,* 45 Mich App 697, 699; 206 NW2d 812 (1973).

lunch, and take them to a hotel where codefendant Goike would be waiting. Brashier would direct the boys to abuse Goike while Goike masturbated. The boys would, inter alia, hit Goike with a stick, urinate and vomit and pour syrup on him, and force him to eat combinations of these materials. Brashier mostly directed the behavior, but also would partake at times. At no time did either the boys or defendant engage in any sexual touching or acts. At the completion of these "occasions," Brashier would pay the boys and threaten them with serious harm if they revealed what occurred.

A jury certainly would be entitled to find that this behavior constituted gross indecency although it did not constitute oral sex. The common sense of the community is clearly offended by these acts. The exact purpose for enacting the gross indecency statute was to combat such aberrant behavior. The appropriateness of maintaining a purposefully vague statute is also clearly revealed by the circumstances of this case. No legislature can be expected to delineate with laser-like precision all possible offensive sexual predilections. Finding that this conduct could not constitute gross indecency simply would be inconsistent with the common law and the purpose of the statute at issue.[9]

IV

Accordingly, I join the memorandum opinion except insofar as it rejects the common sense of the community definition of gross indecency.

GRIFFIN, J., concurred with RILEY, J.

---

[9] Furthermore, Brashier, while not actually fondling the victims, aided and abetted his partner's gross indecency. As such, he may be found guilty of gross indecency. *People v Loveday,* 390 Mich 711; 212 NW2d 708 (1973).