# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GREGORY LAMONT GLENN, JR.,

        Defendant-Appellant.

UNPUBLISHED
May 10, 2016

No. 325640
Wayne Circuit Court
LC No. 14-006694-FH

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of unauthorized access of a computer, MCL 752.795(a). Defendant was sentenced to two years' probation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant, an officer with the United States Customs and Border Patrol (CBP), worked at the Canada-United States border in Detroit, Michigan, during the relevant year of 2013. On January 11, 2013, Amanda Shovlin, with whom defendant had a personal relationship, crossed the border from Canada into the United States, but was detained for secondary inspection[1] prior to entry.

Defendant was not at work that day, but returned to work on January 14, 2013. Video surveillance of the office, in addition to computer monitoring, revealed that defendant searched his TECS computer for Shovlin's name contrary to CBP's TECS use policy, which prohibited officers from searching for information regarding family members and close associates. The policy states in pertinent part:

---

[1] Secondary inspection is a more detailed inspection process for people whose names have been flagged in the Treasury Enforcement Communication System (TECS) law enforcement database. The TECS database contains detailed financial, biographical, and criminal history information.

-1-

Field Operations employees shall not engage in official business involving a family member or a close associate except in the limited circumstances described in 6.2.3 of this section.

* * *

Should circumstances arise in which no disinterested field operation employee is on duty and no supervisor on duty[,] a CBP employee is authorized to conduct business with close family or associates as provided under [sic] and list the management directive number.

Further, when an employee accesses the TECS system, a warning banner is displayed on the screen. The banner states the following:

You are accessing a [US] off [sic] government information system which includes this computer, the computer network, all computers connected to this network and all devices and storage media attached to this network or to a computer on this network.

This information system is provided for US government authorized use only.

Unauthorized or improper use or access of this system may result in disciplinary action, as well as civil and criminal penalties. By using this information system . . ., you understand and consent to the following:

You have no reasonable expectation of privacy when you use this information system. This includes any communications or data transiting stored on, originated from or directed to this information system.

At any time, and for any lawful government purpose[,] [t]he government may monitor, intercept, search and seize any communication or data transiting, stored on, originated from or directed to or from this information system.

The government may disclose or use any communication or data transiting stored on[,] originated from or directed to or from this information system for any lawful government purpose.

You are not authorized to process classified information on this information system.

Defendant was convicted of unauthorized access of a computer contrary to MCL 752.795(a). This appeal followed.

## II. BINDOVER

Defendant argues that he should not have been bound over for trial because the prosecution failed to present evidence establishing probable cause that he had violated

-2-

MCL 752.795(a), and also that the statute does not even apply to the conduct of which defendant was found guilty—violation of an internal computer "use" policy. We disagree.

## A. STANDARD OF REVIEW

We review "for an abuse of discretion a district court's decision to bind over a defendant." *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). "A circuit court's decision with respect to a motion to quash a bindover order is not entitled to deference because this Court applies the same standard of review to this issue as the circuit court." *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Furthermore, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012). However, "[t]he decision whether alleged conduct falls within the statutory scope of a criminal law involves a question of law, which this Court reviews de novo." *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999).

## B. BINDOVER GENERALLY

To bind a defendant over to circuit court, the magistrate at a preliminary examination must "determine whether a felony was committed and whether there is probable cause to believe the defendant committed it." *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003). Probable cause exists where the evidence is "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. at 126 (citation and quotation marks omitted). "In order to establish that a crime has been committed, the prosecution need not prove each element beyond a reasonable doubt, but must present some evidence of each element." *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010). Additionally, "[i]f the evidence conflicts or raises a reasonable doubt concerning the defendant's guilt, the defendant should nevertheless be bound over for trial, at which the trier of fact can resolve the questions." *Id*.

## C. APPLICATION OF MCL 752.795(a)

Turning to the statute in question, MCL 752.795(a) provides the following:

A person shall not intentionally and without authorization or by exceeding valid authorization do any of the following:

(a)    Access or cause access to be made to a computer program, computer, computer system, or computer network to acquire, alter, damage, delete, or destroy property or otherwise use the service of a computer program, computer, computer system, or computer network.

MCL 752.792 further provides the following relevant definitions:

(1)    "Access" means to instruct, communicate with, store data in, retrieve or intercept data from, or otherwise use the resources of a computer program, computer, computer system, or computer network.

-3-

* * *

(3) "Computer" means any connected, directly interoperable or interactive device, equipment, or facility that uses a computer program or other instructions to perform specific operations including logical, arithmetic, or memory functions with or on computer data or a computer program and that can store, retrieve, alter, or communicate the results of the operations to a person, computer program, computer, computer system, or computer network.

(4) "Computer network" means the interconnection of hardwire or wireless communication lines with a computer through remote terminals, or a complex consisting of 2 or more interconnected computers.

(5) "Computer program" means a series of internal or external instructions communicated in a form acceptable to a computer that directs the functioning of a computer, computer system, or computer network in a manner designed to provide or produce products or results from the computer, computer system, or computer network.

(6) "Computer system" means a set of related, connected or unconnected, computer equipment, devices, software, or hardware.

(7) "Device" includes, but is not limited to, an electronic, magnetic, electrochemical, biochemical, hydraulic, optical, or organic object that performs input, output, or storage functions by the manipulation of electronic, magnetic, or other impulses.

The unambiguous language of the statute makes clear that a violation has occurred when a defendant has: (1) intentionally and (2) without authorization or by exceeding valid authorization (3) accessed or caused access to be made to a computer program, computer, computer system, or computer network (4) to acquire, alter, damage, delete, or destroy property or otherwise use the services of a computer program, computer, computer system, or computer network.

The only published case from this Court substantially discussing MCL 752.795 is *People v Golba*, 273 Mich App 603; 729 NW2d 916 (2007). There, the main issue was whether the 64-year-old defendant's conviction under MCL 752.795(a) for using school computers to send pornography and emails of a sexual nature to a 16-year-old student was a "sexual offense" and thus a "listed offense" under the sex offenders registration act (SORA), MCL 28.721 *et seq*. *Id*. at 605, 611-612. In addressing that issue, this Court at least tacitly concluded that the violation of "internal use" policies satisfied the "without authorization" and "exceeds authorized access" elements of MCL 752.795(a):

In the present case, the evidence introduced at trial supported the trial court's findings that defendant violated the school's computer acceptable use policy by downloading pornography on his school computer and that he viewed the pornography on the computer in the presence of a 16-year-old female student. The evidence also supported the trial court's finding that defendant used the

-4-

computer to solicit sex from the student. . . . The policy expressly prohibits users from accessing pornographic materials or inappropriate text files and prohibited users from sending or receiving e-mails that contained "pornographic material" or "inappropriate information." Defendant's conduct was sufficient to support a finding that he intentionally and without authorization, or by exceeding valid authorization, accessed or caused access to be made to the computer in violation of MCL 752.795. [*Id.* at 611-612.]

*Golba* therefore permits "internal use" policies to define the contours of "without authorization" and "exceeds authorized access" in the context of MCL 752.795(a).

In so applying *Golba*, we acknowledge the lengths to which this interpretation could be stretched in other circumstances, and that it could be employed to reach even innocuous types of conduct. Certain justices of the Michigan Supreme Court have similarly expressed concern about the potential overreach of MCL 752.795. See *People v Walker*, 491 Mich 931; 813 NW2d 750 (2012) (MARKMAN, J., concurring).[2]

We reiterate Justice MARKMAN's suggestion of legislative consideration of the scope of MCL 752.795, and note that Justice MARKMAN's concerns have been echoed by federal courts tasked with interpreting provisions of the federal Computer Fraud and Abuse Act (CFAA), 18 USC 1030 et seq. In *United States v Nosal*, 676 F3d 854 (CA 9, 2012), for example, the United States Court of Appeals for the Ninth Circuit, in interpreting a provision of the CFAA with similar language, and applying the rule of lenity, concluded that the phrase "exceeds authorized access" does not extend to violations of employer computer use restrictions, but rather only to individuals whose initial access to a computer is authorized but who accesses information and files that they are not authorized to access. The Second Circuit reached a similar conclusion in *United States v Valle*, 807 F3d 508, 523-528 (2015), in interpreting a different portion of the CFAA that also used the phrase "exceeds authorized access." Other circuits have reached contrary conclusions. See, e.g., *United States v John*, 597 F3d 263, 272 (CA 5, 2010) (holding that employee exceeded authorized access when she accessed information from her employer's database in violation of her employer's use policy); *EF Cultural Travel BV v Explorica, Inc*, 274 F3d 577, 583-584 (CA 1, 2001) (holding that violation of an employer's confidentiality agreement was possibly "exceeding authorized access"); *United States v Rodriguez*, 628 F3d 1258, 1260-1263 (CA 11, 2010) (holding that the defendant exceeded authorized access when he accessed his employer's (Social Security Administration) customer data against office policy to find women to whom to send flowers).

---

[2] Justice MARKMAN wrote, in agreement with Justice KELLY 's dissent to the order denying leave to appeal in that case, "I share the dissenting justice's concern that MCL 752.795 encompasses an extremely broad range of conduct, and further believe that it potentially extends well beyond even its application in the instant case. Therefore, I write separately to urge the Legislature to consider whether it intends to criminalize the full range of conduct to which the statute potentially extends."

These decisions of federal courts, interpreting a federal statute, are of course not binding on this Court in its interpretation of state law, although they may be persuasive. See *Abela v General Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). And, in the instant case, we see no need to determine the full range of conduct to which MCL 752.795 applies. It is undisputed that, while defendant was authorized to access the TECS database generally as part of his job, he was explicitly prohibited from accessing any information relating to family members or close associates. The information he accessed regarding Shovlin was thus information he was not authorized to access. Defendant in fact was aware that he was not permitted to access information regarding persons with whom he had a current or previous dating relationship, as he had on one previous occasion informed his supervisor that he had been in a dating relationship with a woman who had been selected for secondary inspection and did not query the TECS database regarding her; although the supervisor testified that he and defendant did not specifically discuss whether defendant was authorized to query this particular person, he testified as to the general policy prohibiting querying known associates. Further, the trial court heard testimony that defendant had inquired about this policy in 2010, that he spoke with Special Agent Koshorek of the Department of Homeland Security, and that she informed him that he was not supposed to query "known associates or family members" in TECS and emailed him a copy of the relevant portions of the TECS use policy. Thus, even if we were to adopt a narrow construction of the phrase "exceeding valid authorization" under the rationale of the Ninth and Second Circuits, defendant's conduct would fall within the conduct prohibited by the statute. Therefore we conclude that MCL 752.795 applies to defendant's conduct in accessing the TECS system to search for information regarding a close associate. *Golba*, 273 Mich App at 611-612. The computer use policy and banner made it clear to defendant that his use was unauthorized and that he could be subjected to criminal penalties. Further, the statute is not unconstitutional on its face or as applied to defendant, as discussed below.

## D. PROOF OF ELEMENTS

Because MCL 752.795 applies to defendant's conduct, we must assess whether the prosecution presented sufficient evidence at defendant's preliminary examination. We conclude that it did; accordingly, defendant was properly bound over for trial. With respect to the first element of the offense—that defendant acted intentionally—CBP Integrity Officer David Mansell testified that video surveillance showed defendant using his TECS terminal to search for information regarding Shovlin. CBP Internal Affairs Officer Richard Wynns also testified that screenshots of defendant's TECS terminal screen showed him searching for information regarding Shovlin. Defendant's intent may be inferred from circumstantial evidence, including the act itself. See *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) ("A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense."). The second element—that defendant acted without authorization or exceeded valid authorization—was supported by the testimony of CBP Officer Lavarah Miller, who testified about CBP's internal rules, regulations, and policies regarding searching for information regarding close associates and family members. Moreover, Officer Mansell testified that CBP personnel were trained and certified annually regarding TECS and its corresponding use policies. The third element—that defendant accessed a computer system— was easily supported again by Officer Mansell's and Officer Wynns's testimony that defendant accessed TECS. The fourth element—that defendant acquired property or otherwise used the

computer system—was also proven by the referenced testimony from Officers Mansell and Wynns, who both testified that defendant used the TECS computer terminal to search for information regarding Shovlin. In sum, sufficient evidence was presented to show that a "felony was committed" and that there was "probable cause to believe that defendant committed it." *Yost*, 468 Mich at 125-126. As noted, the prosecution was not required to prove all the elements beyond a reasonable doubt at preliminary examination. *Redden*, 290 Mich App at 84.

Moreover, "the presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless." *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010). Here, the prosecution presented sufficient evidence of each element at trial to enable a reasonable juror to convict defendant beyond a reasonable doubt. See *People v Johnson*, 460 Mich. 720, 722-723, 597 NW2d 73 (1999).

### III.  CONSTITUTIONALITY OF MCL 752.795

Defendant argues that MCL 752.795 is unconstitutionally vague because it does not provide adequate notice to a person of ordinary intelligence regarding what conduct is prohibited, and because it lends itself to arbitrary enforcement. We disagree.

### A.  PRESERVATION AND STANDARD OF REVIEW

To preserve the issue of the constitutionality of a statute, the defendant must raise the issue below. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). Defendant did not object to the constitutionality of MCL 752.759 below. Accordingly, this issue is unpreserved for appellate review.

While constitutional issues are generally reviewed de novo on appeal, unpreserved constitutional errors are reviewed for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Plain error analysis requires three findings: (1) error, (2) that is plain, and (3) that affects substantial rights. *Id*. at 763. A plain error will generally affect substantial rights when there is a showing of prejudice—"that the error affected the outcome of the lower court proceedings." *Id*. Once the three findings for plain error are met, "reversal is warranted only when the plain . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted).

### B.  CONSTITUTIONALITY OF A STATUTE GENERALLY

"When considering the constitutionality of a statute, we begin with the presumption that statutes are constitutional and we construe statutes consistent with this presumption unless their unconstitutionality is readily apparent." *Vandenberg*, 307 Mich App at 62. Statutes are presumed to be constitutional, and the party challenging the statute has the burden of showing the contrary. *People v Sands*, 261 Mich App 158, 160, 680 N.W2d 500 (2004). When a party asserts a facial challenge to the constitutionality of a statute, the party must demonstrate that no circumstances exist under which the statute would be valid. *Id*. at 160–161.

"The fact that a statute may appear undesirable, unfair, unjust, or inhumane does not of itself render a statute unconstitutional and empower a court to override the Legislature. *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). A penal statute may be unconstitutionally vague on its face "[if] it fails to provide fair notice of the conduct proscribed, or . . . it is so indefinite that it confers unlimited and unstructured discretion on the trier of fact to determine whether an offense has occurred." *People v Dillon*, 296 Mich App 506, 511; 822 NW2d 611 (2012) (citations and quotation marks omitted). A penal statute may be vague as applied to a particular defendant if it fails to provide notice that his conduct was prohibited. See *People v Lino*, 447 Mich 567, 576; 527 NW2d 434, 438 (1994). "Fair or proper notice exists if the statute gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id*. "For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Id*. (citations and quotations omitted). However, "this Court cannot determine that a statute impermissibly confers unstructured and unlimited discretion unless it first concludes that the wording of the statute itself is vague." *People v Douglas*, 295 Mich App 129, 138; 813 NW2d 337 (2011).

## C. APPLICATION

MCL 752.795(a) is not unconstitutionally vague, either on its face or as applied to defendant. As an initial matter, although defendant claims to take issue with the phrase "access . . . a computer system . . . to use the service," defendant's argument principally relates to the phrases "without authorization" and "exceeding valid authorization." Defendant contends that ordinary people are unable to determine what activities might be criminal under the statute, which is a function of how "without authorization" and "exceeding valid authorization" are defined. However, we do not agree that the phrases "without authorization" and "exceeding valid authorization" fail to provide proper notice to a person of ordinary intelligence of the conduct proscribed. As noted, this Court at least tacitly concluded that internal use policies can establish the contours of "authorization" in the context of MCL 752.795(a). *Golba*, 273 Mich App at 611-612. A person of ordinary intelligence could therefore conclude that the violation of an internal use policy could subject an individual to liability under MCL 752.795(a), thus providing fair notice of at least one type of conduct that is proscribed under the statute. See *Dillon*, 296 Mich App at 511 (holding that judicial interpretations may be relied upon to determine the meaning of a statute). Defendant's claim that the statute is vague because it fails to inform ordinary people of its potentially wide reach accordingly fails.

Moreover, defendant's claim that the statute is unconstitutionally vague because it gives unfettered discretion to the trier of fact fails because defendant cannot show that the wording of the statute—particularly "without authorization" and "exceeding valid authorization"—is vague. See *Douglas*, 295 Mich App at 138 ("[T]his Court cannot determine that a statute impermissibly confers unstructured and unlimited discretion unless it first concludes that the wording of the statute itself is vague."). Based on this Court's previous decision in *Golba*, internal use policies can properly establish the boundaries of "without authorization" and "exceeding valid authorization," and accordingly, the two phrases cannot be considered vague. Not only can "without authorization" and "exceeding valid authorization" curtail traditional types of "hacking," as might be expected, it can also prohibit internal use policy violations. *Golba*, 273 Mich App at 611-612. The phrases at issue are not vague simply because they prohibit a broad

spectrum of conduct. Further, as discussed above, defendant could not reasonably have believed that his conduct in accessing the TECs system to investigate someone he knew personally was authorized. We therefore find defendant's constitutional challenge to MCL 752.795(a) to be without merit.

## IV. FAILURE TO ADMINISTER JURY OATH

Defendant also argues that the trial court failed to administer the jury oath before trial began, thus resulting in structural plain error requiring reversal. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a claim that the trial court failed to administer the jury oath, the defendant must object on this ground below. *People v Cain*, 498 Mich 108, 114; 869 NW2d 829 (2015). Defendant did not object regarding the oath below, and accordingly, this issue is unpreserved for appellate review.

Unpreserved issues are reviewed for plain error. *Carines*, 460 Mich at 764. Again, plain error analysis requires three findings: (1) error, (2) that is plain, and (3) that affects substantial rights. *Id*. at 763. A plain error will generally affect substantial rights when there is a showing of prejudice, i.e., "that the error affected the outcome of the lower court proceedings." *Id*. Even if plain error is found, "reversal is warranted only when the plain . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (citation and quotation marks omitted).

### B. ANALYSIS

MCR 6.412(A) and (F) require the oath contained in MCR 2.511(H)(1) to be given to the jury after it is chosen but before trial begins. MCR 2.511(H)(1) requires the jury to be sworn with the following oath:

> Each of you do solemnly swear (or affirm) that, in this action now before the court, you will justly decide the questions submitted to you, that, unless you are discharged by the court from further deliberation, you will render a true verdict, and that you will render your verdict only on the evidence introduced and in accordance with the instructions of the court, so help you God. [Quotation marks omitted.]

Also, MCL 768.14 requires the following oath:

> You shall well and truly try, and true deliverance make, between the people of this state and the prisoner at bar, whom you shall have in charge, according to the evidence and the laws of this state; so help you God. [Quotation marks omitted.]

Our Supreme Court has held that, where a trial court has failed to properly administer an oath in accordance with statute, courts should engage in a "fact-intensive and case-specific inquiry under the fourth *Carines* prong to assess whether, in light of any countervailing factors

on the record . . . leaving the error unremedied would constitute a miscarriage of justice, i.e., whether the fairness, integrity, or public reputation of the proceedings was seriously affected." *Cain*, 498 Mich at 128 (citation and quotation marks omitted). In *Cain*, the Supreme Court confronted a case where the court clerk had mistakenly administered the voir dire oath[3] to the selected jury instead of the referenced oath contained in MCR 2.511(H)(1). *Id*. at 113-114. The Supreme Court concluded that this error did not warrant reversal because the substantive purpose of the jury oath was served:

> One of the primary purposes of the oath—to impart to the members of the jury their duties as jurors—was alternatively fulfilled in large part by the trial court's instructions prescribing the particulars of the juror's duties. Immediately before the swearing of the oath, the trial court instructed the jurors, "I will now ask you to stand and swear to perform your duty to try the case justly and to reach a true verdict." Following the oath, the court instructed the jurors that it was their responsibility to decide the facts of the case solely on the basis of the evidence presented and the law as the court gave it to them, that they should not consider any other information regarding the trial that was not presented in the courtroom, that they should not discuss the case among themselves until deliberations begin, and that they should keep an open mind about the case, setting aside any bias and prejudice. The trial court also explained the concepts of the presumption of innocence and reasonable doubt, instructing the jurors to return a verdict of not guilty unless they unanimously decided that the prosecutor had proved each element of the offenses beyond a reasonable doubt. In addition, before giving the final instructions, the trial court told the jurors, "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law." And during the final instructions, the judge reiterated the previously described instructions, including that the jury was to decide the case on the basis of the evidence presented during the trial and the law as the court gave it to them, setting aside all bias and prejudice. These instructions encompassed, in even greater detail, duties equivalent to those prescribed in the oath. [*Cain*, 498 Mich at 122-123.]

At the outset, we note that defendant is in error in arguing that the record definitively establishes that the trial court failed to administer the jury oath before trial. Although the record does not evidence the words of the oath as given, the November 5, 2014 trial transcript reflects the following: "(Jurors sworn at 10:05 am [sic] to hear the facts of the case)[.]" Thus, as the prosecution contends, it is likely that the court reporter simply failed to transcribe the jury oath. Moreover, as in *Cain*, the trial court gave the jurors detailed instructions regarding their duties. On October 30, 2014, after the jury was selected (but before trial started on November 5, 2014), the trial court instructed the jurors, in relevant part, that they could not discuss the case with

---

[3] The voir dire oath is as follows: "You do solemnly swear or affirm that you will true answers make to such questions as may be put to you touching upon your qualifications to serve as jurors in the cause now pending before the Court [sic]?" *Cain*, 498 Mich at 113.

anyone, that they should "pay close attention to what is said . . . so that [they] can fairly perform [their] sworn duties as jurors," that the function of the jury is to determine the facts, weigh credibility, and render a verdict, that the jurors keep an open mind until the entire case is submitted, and that the jurors should not form definite or fixed opinions until all the evidence and arguments were presented. The trial court's instructions to the jury span five transcript pages. Also, the trial court, during final instructions, reminded the jury, "Remember that you have taken an oath to return a true and just verdict based only on the evidence and my instructions on the law." Additionally, the trial court instructed the jury at length about its deliberation duties, the concept of reasonable doubt, the importance of eschewing bias, and the requirement of only considering the evidence presented. Thus, we conclude, as did the Supreme Court in *Cain*, that reversal is not required.

Affirmed.


/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering